# 22-1970-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT



STEVEN ERIC GREER,

*Plaintiff-Appellant,*

*v.*

FOX NEWS MEDIA, FOX CORPORATION, FOX NEWS NETWORK LLC, LACHLAN MURDOCH, SUZANNE SCOTT, JUSTIN WELLS, CHARLES GASPARINO, FOX BUSINESS NETWORK, BRIAN JONES, NEWS CORPORATION, DOW JONES, THE WALL STREET JOURNAL, GERARD BAKER,

*Defendants-Appellees,*

*and*

TUCKER CARLSON, JENNIFER STRASBURG, RUDOLPH GIULIANI, GMSC SECURITY, BLAKE NEFF,

*Defendants.*

On Appeal from the United States District Court
for the Southern District of New York

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

STEVEN ERIC GREER
*Plaintiff-Appellant Pro Se*
212-945-7252
steve@greerjournal.com

# TABLE of CONTENTS

JURISDICTION.....................................................................................1

STANDARD of REVIEW .....................................................................1

ISSUES for REVIEW ...........................................................................2

   1.  Did the district court create a paradox by ruling that federal
      copyright law preempted state law when SCOTUS recently
      prohibited the use of copyright law in cases like *Greer v. Fox*?.....................2

   2.  Did the District Court misapprehend preemption law?...................3

   3.  Should Appellant have been given leave to amend the complaint
      to include a breach of implied-in-fact contract claim that would
      have defeated the preemption arguments? ........................................3

   4.  Did the District Court judge err by overruling the magistrate
      Report and dismissing defamation claims that had already
      survived multiple motions to dismiss? ............................................4

STATEMENT of the CASE ...................................................................5

   The Nature of the Case ......................................................................5

   The Course of Proceedings and Disposition Below...............................5

STATEMENT of FACTS .......................................................................7

SUMMARY of ARGUMENTS...............................................................11

   Copyright Preemption: The District Court erred by ignoring recent
   Supreme Court law, using instead outdated case law, thus creating
   a paradox...........................................................................................11

   Copyright Preemption: The District Court erred by not granting
   leave to amend the complaint to add breach of implied-in-fact contract.............13

   Defamation: The district court judge should not have reversed the
   magistrate Report by dismissing the defamation claims .......................15

FIRST ARGUMENT- Federal Copyright Law Does Not Preempt a State Law Defense of Unregistered Ideas ................................................16

  Obsolete or irrelevant case law...................................................16

    Appellant's work was neither registered nor registerable ................................17

    General case law on preemption ..............................................18

  Appellant's main argument using *Fourth Estate* was ignored...........................18

  Appellant did not argue "partial preemption" as a defense against MTD ................................................19

  The District Court created a paradox in copyright law ........................................22

SECOND ARGUMENT- Leave to Amend the Complaint to Add Breach of Contract Should Have Been Granted .......................................23

  Appellant detailed how he formed an implied-in-fact contract and why it was important .........................................23

  District Court committed abuse of discretion by not granting leave to amend the complaint .........................................25

  Appellant did allege the elements of a contract ..................................................26

THIRD ARGUMENT- The magistrate Report that granted leave to amend the defamation claims should not have been reversed ................................30

  Incorrect standard of review was used ................................................30

  People were erroneously listed as defendants ......................................31

  The tolling argument ........................................................31

  The Gasparino defamatory comments were not protected opinion ....................33

  The defamation claims did indeed state a proper claim of the elements ............34

CONCLUSION ...............................................................................35

CERTIFICATE OF COMPLIANCE........................................................37

ii

## <u>TABLE of AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................2, 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................2, 5

*Benay v. Warner Bros. Entm't, Inc.,* 607 F.3d 620, 629 (9th Cir. 2010) ................24

*Berman v. Neo@Ogilvy LLC*, No. 1:14-CV-523-GHW-SN,
2016 WL 815158, at *1 (S.D.N.Y. Feb. 22, 2016) ..............................................30

*Chambers v. Time Warner, Inc.*, 282 F. 3d 147 - 2d Cir.2002 .................................1

*Desny v.Wilder,* 46 Cal. 2d 715, 299 P.2d 257 (1956) .................................... 24, 28

*Feist Publications, Inc. v. Rural Tel. Service Co.,*
499 U.S. 340, 350, 111 S.Ct. 1282, 1290, 113 L.Ed.2d 358 (1991) ..................22

*Forest Park Pictures v. Universal Television Network, Inc.*,
683 F.3d 424, 430 (2d Cir. 2012) ............................................................... passim

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
139 S.Ct. 881 (2019)......................................................................... 3, 12, 17, 18

*Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001) .....................................................2

*Grosso v. Miramax Film Corp.,* 383 F.3d 965, 967 (9th Cir. 2004) ......................24

*Gunther-Wahl Prods., Inc. v. Mattel, Inc.,*
104 Cal. App. 4th 27, 128 Cal. Rptr. 2d 50, 57-59, 63 (2002)............................24

*Harper & Row, Publishers, Inc. v. Nation Enter.,*
471 U.S. 539, 547, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985) .....................22

*Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*,
476 F. Supp. 2d 291 - Dist. Court, SDNY.........................................................18

*Lozman v. City of Riviera Beach, Florida*,
Docket No. 17-21, citation pending .................................................................. iv

*Mastercraft Decorators, Inc. v. Orlando*,
356 F. Supp. 3d 259, 274 (W.D.N.Y. 2018) .........................................................33

*Montz v. Pilgrim Films & Television, Inc.,*
649 F.3d 975, 979 (9th Cir. 2011) .......................................................................24

*Myrieckes v. Woods*, No. 08-CV-4297-GBD-THK,
2009 WL 884561, at *6 (S.D.N.Y. Mar. 31, 2009)...................................... 29, 30

*National Basketball Ass'n v. Motorola, Inc*. 105 F. 3d 841 2d Cir.1997.............3, 19

*Panizza v. Mattel, Inc*., No. 02-CV-07722-GBD,
2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) .........................................18

*Rivera v. Barnhart*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006) .............................29

*Selkirk v. State*, 249 A.D.2d 818, 819, 671 N.Y.S.2d 824, 825 (1998) ...................32

*Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000).......................................................2

*Transcience Corp. v. Big Time Toys, LLC*,
50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014) ...........................................................18

*Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 370-71 (N.D.N.Y. 2021) ..........33

*We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*,
221 F. Supp. 3d 396, 410 (S.D.N.Y. 2016) ..........................................................19

*Wiltshire v. Wanderman*, No. 13-CV-9169 CS,
2015 WL 4164808, at *1 n.3 (S.D.N.Y. July 10, 2015)........................................25

*Wnet v. Aereo, Inc*., 871 F. Supp. 2d 281, 291 (S.D.N.Y. 2012)..............................20

**Statutes**

U.S. Code: Title 17- Copyright...................................................................... 2, 3, 17

iv

## **JURISDICTION**

The District Court had subject matter jurisdiction by diversity of citizenship pursuant to 28 U.S.C. §1332(a)(1). This Appeals Court has jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

The second amended complaint (SAC) was filed on March 1st, 2021. (A30). The magistrate report on Appellees' Motion to Dismiss ("MTD") (A267) was objected to by both parties on June 14th, 2021 (A290 and A298). The memorandum (A325) and then final judgment on the MTD (A344) were entered on September 7th and 8th, 2022 respectively. Plaintiff filed a timely notice of appeal on September 8th, 2022. (A345).

The appeal is from a final judgment that disposes of all Plaintiff's claims in this action against all defendants.

## **STANDARD of REVIEW**

Under Fed. R. Civ. P. 12(b), this Second Circuit Court of Appeal uses the *de novo* standard of review for an appeal of a MTD judgment. In *Chambers v. Time Warner, Inc*., 282 F. 3d 147 - 2d Cir.2002, "We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *Gregory v. Daly,* 243 F.3d 687, 691 (2d

1

Cir.2001). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir.2000)."

## <u>ISSUES for REVIEW</u>

**1. Did the district court create a paradox by ruling that federal copyright law preempted state law when SCOTUS recently prohibited the use of copyright law in cases like *Greer v. Fox*?**

The district court did not argue that Appellant failed to state a claim regarding the allegations that Tucker Carlson, *et al* stole his ideas. The merits of those causes of action have never been questioned by the district court. The complaint made a "plausible" case that would have survived a MTD by the standards of "Twigbal" or *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Instead, the District Court used "preemption" case law to justify dismissing the complaint. It ruled that the state laws used in the complaint were preempted by U.S. Code: Title 17- Copyright (The Copyright Act of 1976).

However, the lower court seemed to ignore the fact that Justice Ginsburg and her unanimous Supreme Court ruled in 2019 that copyright law could not be used as a cause of action in Appellant's complaint because his ideas and works were not

registered. *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881 (2019). Also, mere ideas cannot be protected by copyright law.

The District Court ruling created a circular logic paradox. Appellant could not have been faulted for not using copyright law if the highest court in the land ruled that it was illegal to use copyright law (because the content was not registered).

The case law used by the lower court seems to have been rendered outdated by *Fourth Estate*. If so, a decision by this Court of Appeals is required to update the case law on how the Copyright Act is to be applied to theft of ideas claims using state law.

## 2. Did the District Court misapprehend preemption law?

By using the federal law preemption concepts, the District Court cited several cases that seem to have been misapprehended as they apply to this instant case. *National Basketball Ass'n v. Motorola, Inc*. 105 F. 3d 841 2d Cir.1997 cannot be used to show that Appellant improperly tried a "partial preemption" maneuver. *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012) actually supports Appellant's arguments regarding implied-in-fact contracts.

## 3. Should Appellant have been given leave to amend the complaint to include a breach of implied-in-fact contract claim that would have defeated the preemption arguments?

The magistrate report had already granted leave to amend the complaint for matters related to defamation claims. The District Court then raised the issue of whether or not Appellant had sated a claim of breach of implied-in-fact contract by Fox News. If he had, then the preemption defense would have failed.

However, the District Court not only failed to grant leave to insert a proper claim of breach of contract, but it also revoked the magistrate Report leave to amend the complaint. That caused the entire case to be dismissed.

Why was this decision made? The report had already allowed for the complaint to be amended. Why revoke this given that inserting the claim of breach of contract would certainly have defeated the motion to dismiss?

### 4. Did the District Court judge err by overruling the magistrate Report and dismissing defamation claims that had already survived multiple motions to dismiss?

The magistrate Report had granted leave for Appellant to amend the complaint to better state the elements required to prove a claim of defamation. After 16-months from the time of appeal of that Report, the presiding judge overruled the Report and dismissed the entire case. That decision included fatal errors, such as listing Sam Moser as a defendant when he was not.

How did the defamation claims survive two motions to dismiss if they were so flawed? Were the reasons used by the district court judge based on conclusory opinions that a jury should have been allowed to decide? Did Appellant meet the

4

standards to survive a Rule 12(b) set by "Twigbal" (*Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*)? Why did it take 16-months to issue the final decision?

## STATEMENT of the CASE

**The Nature of the Case**

This case involves two baskets of causes of action. One group falls into the misappropriation of ideas basket. The other group falls into blacklisting basket. The long list of defendants have in common that they are part of the Murdoch family's corporations of TV or print media.

Appellant began working with Appellees around 2008. The relationship soured after 2013 and Appellant was blacklisted. Defamation was the weapon used.

After Tucker Carlson started his TV show, Appellant noticed with regularity how his ideas were being used without recognition or payment. The misappropriation of ideas were not protected by copyright law and were not registered with the copyright office. Therefore, state law and torts were used as causes of action rather than copyright law. There was also a contract formed. For those reasons, copyright law does not preempt the state laws used.

**The Course of Proceedings and Disposition Below**

- July 14, 2020- Appellant commenced this action (see ECF 1)

5

- July 21, 2020- Appellant filed a "corrected" complaint to address typographical errors. (see ECF 6)

- August 13, 2020- Appellant filed an Amended Complaint, which dropped the federal copyright claim after he learned it was illegal for him to use that law given the 2019 Supreme Court ruling. (see ECF 40)

- September 18, 2020- Appellees filed a motion to dismiss (MTD) for lack of subject matter jurisdiction (see ECF 46), asserting that two of the moving defendants were nondiverse.

- December 24, 2020- Judge Aaron issued a Report recommending that the jurisdictional motion to dismiss be granted with leave to amend. (see ECF 121). The case survived the MTD.

- January 28, 2021- Judge Tailor adopted that Report and recommendation. (see ECF 133)

- March 1, 2021- Appellant filed his Second Amended Complaint (SAC) (A30) dropping the two nondiverse defendants (Carlson and Strasburg) and raising eight state law causes of action.

- April 9, 2021- The Fox News News Corp. Appellees (A131) and defendant Blake Neff moved to dismiss the SAC. The MTD's were referred to Magistrate Judge Aaron for a report and recommendation.

6

- April 23, 2021- Appellant filed a response in opposition to the MTD. (A185)

- May 5, 2021- Appellees filed a reply. (A240)

- June 3, 2021- Judge Aaron filed his Report, which recommended that Defendants' MTD be granted, but Appellant was given leave to amend the complaint gain. The complaint survived the MTD. (A267)

- June 14, 2021- Appellant filed an objection to the Report asserting that several of his claims should not have been dismissed. (A290)

- June 16, 2021- Appellees filed a partial objection to the Report asserting that all of Appellees claims should have been dismissed with prejudice and without leave to amend. (A298)

- June 28, 2022- Appellees also filed an opposition to Appellant's objection. (A306)

- September 7, 2022- Judge Swain issued a memorandum order granting the MTD with prejudice. (A325). The entire complaint was defeated this time.

- September 8, 2022- Judge Swain issued the final order. (A344)

- September 8, 2022- Filed a notice of appeal. (A345)

## **STATEMENT of FACTS**

Plaintiff-Appellant Steven E. Greer, MD is trained in surgery and research. He is the author of medical papers and books. Those efforts led him into journalism

7

as well.[1] He then entered the field of Wall Street equities research at the bank of Donaldson Lufkin & Jenrette where his team was highly ranked by important research polls. He wrote the lengthy reports involved in the investment banking process. He then became a portfolio manager for large hedge funds, eventually becoming the global head of healthcare portfolios for Merrill Lynch's internal hedge fund with $10 Billion in assets.

Appellant is also experienced at litigating *pro se*. This began around 2014 when a New York State entity retaliated against Appellant over his muckraking reporting of corruption. In *Greer v. Mehiel* 15-cv-6119 SDNY (Judge Nathan), the case defeated the MTD. After extensive discovery, the private sector defendants settled, but the case was defeated in summary judgment. Out of principle, Appellant took the state actors to the Supreme Court of the United States.[2] In this instant case, the chief judge of the district court ruled that Appellant was, "…a fairly sophisticated and experienced litigant, who appears to possess a good understanding of the law".

In 2007, Appellant started The Healthcare Channel, a subscription service for institutional funds, and began to appear on cable TV news. He also wrote opinion pieces for The Wall Street Journal and was a contracted freelance journalist for News

---

[1] The district court ruled that Greer was a "journalist" (see *Greer v Mehiel* 15-cv-06119-AJN-JLC, ECF 395-6, Page 34).

[2] No writs were accepted during that session, possible due to illnesses by Justices Ginsburg and Roberts. However, Appellant defeated the largest law firm in Ohio in SCOTUS motion practice and caused them to leave the case. Also, the entire Mehiel regime of the BPCA was ousted.

Corp and Reuters. Greer has covered events from The White House, The U.S. Department of Health and Human Services (HHS), congress, and business news.

Those efforts led him in 2008 into contact with Brian Jones of The Fox Business channel, which was being launched by Lachlan Murdoch independently of Roger Ailes, who ran Fox News. There was friction between the Murdochs and Roger Ailes. Mr. Jones liked Dr. Greer's appearances on CNBC and recruited him to be the lead guest on numerus Fox Business shows. He eventually made Dr. Greer a written offer of employment, but Dr. Greer rejected the initial "consideration" (i.e., the dollar amount) for being too low. Negotiations continued.

After rejecting the employment offer consideration (but not the other aspects of the contract offer), senior producers reached out to Dr. Greer to recruit him again. Dr. Greer continued to help Appellees for afterward fully expecting to be compensated with a new contract offer eventually.

An implied-in-fact contract was certainly formed. Dr. Greer continued to provide services of value to Appellees (an explicit contract could well be argued was formed).

Dr. Greer's services were so beneficial and valued that he began negotiating with Lex Fenwick, the CEO of defendant company Dow Jones, to create a novel Internet companion to their Wall Street Journal that would provide expert video interviews in the healthcare sector. It was similar to Dr. Greer's existing Healthcare

Channel. When Mr. Fenwick was replaced by an insider that the Murdochs trusted more, defendant-appellee Gerard Baker, the plans to build the project ended. However, when Dr. Greer noticed that the WSJ had created a copycat version of Greer's idea, he hired the law firm of Gerard Fox and sent them a legal letter that was ignored.

After the relationship between Appellant and Appellee soured, the blacklisting began. From around 2013 onward, Dr. Greer was unable to be booked as a guest on any cable TV network. His books were unable to be promoted, etc.

When Tucker Carlson started his evening show, Dr. Greer began noticing how his novel ideas expressed in essays were being used regularly by the show as the leading monologue. Dr. Greer was still emailing Appellees his ideas because no formal separation had ever been announced.

In early 2020 as the pandemic and lockdowns began, Dr. Greer's ideas were of such importance that he became, rather accidentally, the star guest of the Joe Piscopo radio show in the New York and Tri-State media market. Dr. Greer was the first person to question the legitimacy of Anthony Fauci, for example. His appearances were heard by competing radio station WABC and Dr. Greer was recruited to appear on their shows. WABC made offers to Dr. Greer to create his own radio show.

Many Fox employees also have radio shows on WABC. When Appellee's learned that Dr. Greer was making a comeback in media, they told WABC producers to blacklist him. Like a light switch going off, WABC and the Joe Piscopo show stopped using Dr. Greer as a guest.

There was ample circumstantial evidence that Appellees were behind it all. After enduring nearly a decade of these attacks from Appellees, Appellant was forced to file this complaint in an attempt to stop the damage.

## SUMMARY of ARGUMENTS

**Copyright Preemption: The District Court erred by ignoring recent Supreme Court law, using instead outdated case law, thus creating a paradox**

In the decision to dismiss Appellant's causes of action that relied on the claim of misappropriation of ideas, the District Court did not challenge the merits of the allegation. Appellant sufficiently stated the claim in the 100-page SAC that his ideas were used by Tucker Carlson, Justin Wells, and their Fox Corporation employers to produce stories for their Tucker Carlson Tonight show (News Corp defendants also used Appellants ideas for numerous Wall Street Journal front-page articles). (A54). Instead, the causes of action were dismissed based on the rationale that federal copyright law preempted the state law used.

11

In granting the MTD based on the preemption rationale, the district court used case law that is now obsolete, as it pertains to this instant case, due to the 2019 Supreme Court ruling of *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 139 S.Ct. 881 (2019). In *Fourth Estate*, Justice Ginsburg and her unanimous colleagues on the bench made it illegal for Appellant to have used copyright law since his works were not registered. That is one reason why Appellant removed the copyright claims in the amended complaint.

However, the case law used to justify the case dismissal was created prior to *Fourth Estate*. Also, the case law used was either irrelevant or misapprehended.

If held, the District Court decision will create a paradox in copyright and state law. The Supreme Court's *Fourth Estate* makes it illegal to use copyright law in cases like this one (i.e. the material is not, and could not be, registered), but the older case law means that copyright law should be used, regardless, because of preemption. That is a paradox. The use of copyright law in a complaint would result in a dismissal per *Fourth Estate*, while the use of state law would also be dismissed due to preemption.

12

**Copyright Preemption: The District Court erred by not granting leave to amend the complaint to add breach of implied-in-fact contract**

In the Report (A287), the magistrate judge, one again, allowed Appellant to amend the complaint to better state claims related to defamation. The subsequent ruling by the district judge should have also allowed the claim of breach of implied-in-fact contract to be inserted as a cause of action.

The evidence, had it been framed as a cause of action, was clear enough to survive a MTD (and summary judgment) that an implied-in-fact contract existed between Fox News, *et al* and Appellant. In fact, Fox News made Appellant a written offer of employment and willingly accepted his tips and ideas. This was not the usual sketchy complaint filed by a disgruntled screenplay author trying to shakedown a Hollywood studio. Appellant was well known to Appellees and they held his work in high esteem.

Notable is the Second Circuit Court of Appeals ruling in *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 430 (2d Cir. 2012) that interactions between a large studio and small content creator, such as Fox News and Appellant in this case, create an implied-in-fact contract that is not preempted by copyright law. This was detailed in Appellant's memorandum in opposition to the MTD (A201-204, 210), but not as a formal cause of action in the complaint.

Appellant is *pro se* and was not an expert on the law when he wrote the complaints. Complaints are not the time to insert case law. When he was preparing the opposition to the MTD is when he learned of *Forest Park*.

That ruling seemed to have cases just like this one in mind. *Forest Park* recognized the reality of dealing with a large studio. Most ideas for movies, TV shows, etc. are done as "pitches" of ideas that are not protected by copyright law. Most content creators are lone authors who lack the large sums of money to hire copyright lawyers. *Forest Park* shifted the pendulum back to the state courts for authority to protect the little guy.

The final decision by the presiding judge (A333-334) spotted this *Forest Park* argument made, but ruled that it would be too late in the process to allow for the complaint to be amended. That was not true. The magistrate report (A287) allowed Appellant to amend the complaint to address defamation causes of action that he felt could have been stated better to meet the elements. Therefore, it would not have been too late in the litigation process to also add as an official cause of action the "Breach of Implied-in-Fact Contract".

Had the same arguments that was made in Appellant's MTD memorandum been allowed to be properly stated as a cause of action, Appellees would have had no good defense. This case would be heading to discovery.

14

**Defamation: The district court judge should not have reversed the magistrate Report by dismissing the defamation claims**

The underlying claims of the defamation cause of action were stated well enough to survive two different of motions to dismiss. The magistrate Report granted leave to amend the cause of action to better meet the elements required by state law. (A287). Appellant did not immediately amend the complaint because he appealed other components of the Report.

Sixteen-months after the appeal of the Report was filed, Appellant called the district court to inquire on the status. The district judge issued a final decision (A325) weeks later. It overruled the Report and dismissed the entire complaint with prejudice.

However, that decision was replete with factual errors, such as listing Sam Moser as a defendant when he was not one. (A334). That was not a small slip. It showed that the district judge did not properly read the complaint. Sam Moser was listed as someone propagating defamation that emanated from Fox. Moser was cited as supporting evidence of a pattern of backlisting.

Another key mistake was the decision on the tolling argument. Appellant argued that a 2013 incident of defamation at the Fox building security desk was still an actionable incident because it was part of an ongoing pattern of defamation that occurred within the one-year statute of limitations. Therefore, it was tolled.

15

However, the decision misconstrued this as Appellant claiming he was still harmed from that 2013 singular event. (A336).

With the Gasparino defamation incidents, numerous factual errors were made. The decision then relied of conclusory opinions that a jury should have been allowed to determine.

## FIRST ARGUMENT- Federal Copyright Law Does Not Preempt a State Law Defense of Unregistered Ideas

In the decision to dismiss Appellant's causes of action that relied on the claim of misappropriation of ideas, the District Court did not challenge the merits of the allegation. Appellant sufficiently stated the claim in his 100-page complaint that his ideas were used by Tucker Carlson, Justin Wells, and their Fox Corporation employers to produce stories for their Tucker Carlson Tonight show (News Corp defendants also used Appellants ideas for numerous Wall Street Journal front-page articles). (A54). Instead, the causes of action were dismissed on the rationale that federal copyright law preempted the state torts used.

**Obsolete or irrelevant case law**

In granting the MTD based on the preemption rationale, the district court used case law that is now obsolete, as it pertains to this instant case, due to the 2019 Supreme Court ruling of *Fourth Estate Public Benefit Corp. v. Wall-Street.com,*

*LLC*, 139 S.Ct. 881 (2019). In *Fourth Estate*, Justice Ginsburg and her unanimous colleagues on the bench made it illegal for Appellant to have used copyright law since his works were neither registered nor registerable. That is why Appellant removed the copyright claims in the amended complaint.

<u>Appellant's work was neither registered nor registerable</u>

*Fourth Estate* states:

> "For the reasons stated, we conclude that "registration ... has been made" within the meaning of 17 U.S.C. § 411(a) not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application."

None of Appellant's ideas that were misappropriated by Appellees were registered when the complaint was first filed on July 14, 2020.

Moreover, the ideas that were misappropriated would never have been registered by the Copyright Office. In the Copyright Act, "17 U.S. Code § 102 - Subject matter of copyright", it states:

> "In no case does copyright protection for an original work of authorship <u>extend to any idea</u>, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.".

General case law on preemption

On (A330), The district court uses *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014) (citing 17 U.S.C. § 301(a)), *Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291 - Dist. Court, SDNY, and *Panizza v. Mattel, Inc*., No. 02-CV-07722-GBD, 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) collectively to make the point that copyright law preempts state law. All of the cases predate the 2019 Fourth Estate making them obsolete for this instant case. None of those cases are from this or any other court of appeals.

Also, those cases refer to "types of work protected by the Copyright Act". As explained above, Appellees carefully avoiding the obvious cutting and pasting of Appellant's work. Instead, they misappropriated his ideas, which are not protected by copyright law. Nowhere did either the magistrate or presiding judge explain how ideas are protected by copyright law.

**Appellant's main argument using *Fourth Estate* was ignored**

Appellant's important argument against preemption cited the 2019 *Fourth Estate* law. However, nowhere in either the magistrate report (A267) or the final memorandum by the judge (A325) is *Fourth Estate* even cited. This argument was simply ignored.

18

The presiding judge addresses the argument that lack of copyright registration defeats a preemption defense by using outdated case law of *Forest Park Pictures v. Universal Television Network, Inc*., 683 F.3d 424, 429-30 (2d Cir. 2012)[3] and *We Shall Overcome Found. v. Richmond Org., Inc. (TRO Inc.)*, 221 F. Supp. 3d 396, 410 (S.D.N.Y. 2016). By ignoring the newer *Fourth Estate*, the district court reasoning is abjectly irrelevant.[4]

**Appellant did not argue "partial preemption" as a defense against MTD**

In rebutting Appellant's argument that his ideas were not "of a type" protected by copyright law, and thus could not be preempted by copyright law, the district judge relied on the magistrate judge's decision. However, that reasoning was based on the misapprehension of *National Basketball Ass'n v. Motorola, Inc*. 105 F. 3d 841 2d Cir.1997 and *Wnet v. Aereo, Inc*., 871 F. Supp. 2d 281, 291 (S.D.N.Y. 2012).

The decision cites the District Court decision *Wnet v. Aereo*. The quote used was:

> "…a plaintiff's state law claim will be preempted *both* when the plaintiff alleges "reproduction, distribution, or display of the copyrighted works themselves," *and* when the plaintiff alleges "acts of reproduction, distribution, and

---

[3] *Forest Park* is very relevant to Appellant's claim of breach of implied-in-fact contract

[4] While it might have been an oversight for one judge to ignore *Fourth Estate*, for two chambers and multiple clerks to ignore this implies something else.

display of the uncopyrightable facts [or ideas] in the works" (A332).

The district court then creates a *non sequitur* by somehow concluding from that quote:

> "Thus, regardless of whether Plaintiff's claims concerned the copying of his tangible works (i.e., his books), or copying of the facts and ideas contained in his books, these claims are all equally preempted under the Copyright Act, as Judge Aaron correctly concluded."

The conclusion and the case law quoted are unrelated in reasoning. The statements are also factually incorrect.

First, the Appellant's ideas that were stolen by Tucker Carlson, *et al* were not from books. They were from his blog essays and emails to Appellees. (A80-102). Books are much more clearly defined when it comes to copyright protection.

Secondly, *Wnet v. Aereo* is a case that addressed a novel new way of using free Internet transmission of TV content that was controlled by subscription cable TV. The "acts" in that case (i.e., using the Aero devices) have nothing to do with this instant case. The quote used by the district court is taken highly out of context. The acts of Tucker Carlson reading on TV repackaged ideas belonging to Appellant have nothing to do with Aero stealing cable TV transmissions. To use *Wnet v. Aereo* is a bridge too far.

The decision also lists *Wnet v. Aereo* right after *NBA* as if it were used in that *NBA* case. But the *NBA* case does not reference *Wnet*.

The Second Circuit's *NBA* decision involved a company that was collecting and selling basketball scores without paying the NBA. It is a highly complex decision with many findings. It has long been used in the briefings of this case in nonsensical ways. As it applies to this instant case, *NBA* ruled that underlying content that is not copyrightable, such as a real basketball game witnessed in person, would not prevent copyright law from preempting a copyrightable derivative of that basketball game. That is the "partial preemption" concept.

However, nowhere does Appellant make any such "partial preemption" argument. The district court failed to make a coherent allegation that he did. The decision states:

> "Plaintiff next argues that the doctrine of copyright preemption cannot apply because his complaint only alleged the theft of ideas (as opposed to written materials), and because a person cannot copyright mere ideas. This argument is also erroneous. As noted by Judge Aaron, the Second Circuit has previously rejected this type of "partial preemption" notion—i.e., the notion that preemption should only apply to claims based on misappropriation of tangible mediums of expression (such as a book or recording), but not to claims for misappropriation of the underlying facts or ideas. See Nat'l Basketball Ass'n, 105 F.3d at 849;" (A332)

But this quote is factually wrong. The Second Circuit's *NBA* case never states a "partial preemption" argument relevant to this instant case. It was *Wnet v. Aereo* that was quoted, as detailed above.

In fact, the *NBA* case actually supports Appellant in that it reinforced how underlying "facts and ideas", such as Appellant's, are not copyrightable. *NBA* stated:

> "The "fact/expression dichotomy" is a bedrock principle of copyright law that "limits severely the scope of protection in fact-based works." *Feist Publications, Inc. v. Rural Tel. Service Co.,* 499 U.S. 340, 350, 111 S.Ct. 1282, 1290, 113 L.Ed.2d 358 (1991). "`No author may copyright facts or ideas. The copyright is limited to those aspects of the work — termed `expression' — that display the stamp of the author's originality.'" *Id.* (quoting *Harper & Row, Publishers, Inc. v. Nation Enter.,* 471 U.S. 539, 547, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985))."

If the District Court decision is held by this Second Circuit, a will be a precedent that will erode those bedrocks established by the Second Circuit. The current District Court ruling construes Appellant's ideas as being "of a type" of work protected by copyright law that is preemptable. This ignores the Supreme Court's *Fourth Estate*, the Second Circuit's *Forest Park* and "bedrock" cases cited above, and misapprehends *NBA*.

**The District Court created a paradox in copyright law**

If held, the District Court decision will create a paradox in copyright and state law. The Supreme Court's *Fourth Estate* makes it illegal to use copyright law in

cases like this one (i.e., the material is not registered), but the older case law means that copyright law should be used, regardless, because of preemption. That is a paradox. The use of copyright law in a complaint would result in a dismissal per *Fourth Estate*, while the use of state law would also be dismissed due to preemption.

## SECOND ARGUMENT- Leave to Amend the Complaint to Add Breach of Contract Should Have Been Granted

Appellant argued in the complaint that he established an implied-in-fact contract with other media companies. He did so as part of the causes of action claiming that Appellees interfered with third-party contracts.

However, Appellant did not explicitly argue that he formed an implied-in-fact contract with Appellees until he wrote his memorandum (MOL) in defense of the MTD (A185). The District Court addressed the MOL in the final order memorandum (A332-334), but did not allow Appellant to amend the complaint to create a formal cause of action.

### Appellant detailed how he formed an implied-in-fact contract and why it was important

First, in Appellant's MOL, he detailed the facts and case law that explain how he had established an implied-in-fact contract with Appellants. (A209-211). There is no dispute that Appellant gave ideas for cable TV news content and newspaper

23

print to Appellees. They never requested that he stop or made any effort to block

him. In fact, Appellees made Appellant a written offer of employment.

With those conditions laid out in the MOL, Appellant then listed ample case

law that overwhelmingly rules that Appellant established an implied-in-fact contract.

See *Forest Park*, *Desny v.Wilder,* 46 Cal. 2d 715, 299 P.2d 257 (1956), *Montz v.*

*Pilgrim Films & Television, Inc.,* 649 F.3d 975, 979 (9th Cir. 2011), 649 F.3d at 976-

77, *Benay v. Warner Bros. Entm't, Inc.,* 607 F.3d 620, 629 (9th Cir. 2010); *Grosso*

*v. Miramax Film Corp.,* 383 F.3d 965, 967 (9th Cir. 2004), and *Gunther-Wahl*

*Prods., Inc. v. Mattel, Inc.,* 104 Cal. App. 4th 27, 128 Cal. Rptr. 2d 50, 57-59, 63

(2002).

Appellant made these arguments in the MOL and not the complaint because

the MTD preemption arguments were not raised at the time of the complaint. While

a good lawyer would have foreseen the need to state a claim of breach of contract,

the *pro se* Appellant overlooked this in the complaint.

By detailing the case law and facts of implied-in-fact contract, Appellant was

using that law as a defense against the MTD. Therefore, he was pointing out the

importance, per *Forest Park*, *inter alia*, of having a contract as it relates to defeating

a copyright preemption of state law defense. The district court agreed that *Forest*

*Park* would defeat the preemption argument by stating:

> "Interpreting his arguments with leniency, the Court notes
> that Plaintiff may be referring to the doctrine whereby an
> implied-in-fact contract is not always preempted by the
> Copyright Act. See, e.g., *Forest Park*, 683 F.3d at 432
> (finding that a claim for breach of an implied-in-fact
> contract should not be preempted by the Copyright Act)."

**District Court committed abuse of discretion by not granting leave
to amend the complaint**

Leave to amend the complaint should have been granted given that the

magistrate report had already allowed the complaint to be amended for unrelated

defamation causes of action. (A287). The District Court reasoned this harsh decision

as:

> "To the extent that this argument represents Plaintiff's
> attempt to raise a new claim (i.e., a claim for breach of an
> implied-in-fact contract) at this late stage in the litigation,
> this attempt must fail. As an initial matter, Plaintiff has
> waived this issue by failing to raise it in his SAC. While
> Plaintiff mentioned this implied-in-fact contract idea in
> passing in his opposition to Defendant's motion to
> dismiss, his SAC did not include breach of an implied-in-
> fact contract as one of his eight causes of action. It is
> well-established that, despite the "procedural latitude"
> afforded to pro se plaintiffs, "courts are not required to
> consider claims that are raised for the first time in a pro
> se plaintiff's papers in opposition to a motion." *Wiltshire
> v. Wanderman*, No. 13-CV-9169 CS, 2015 WL 4164808,
> at *1 n.3 (S.D.N.Y. July 10, 2015) (citations omitted)."
> (A333).

25

However, that weak case law cited, *Wiltshire*, is also irrelevant to this instant case. The magistrate Report had already granted leave to amend for other purposes and yet the District Court inexplicably dismissed the entire case.

**Appellant did allege the elements of a contract**

The district court then concluded its reasoning for not allowing the complaint to be amended by claiming, essentially, that it would have been futile because Appellant did not claim the elements required for implied-in-fact contract. (A333). That is a conclusory and false statement. Even though there was no formal cause of action where elements of a claim are normally stated, Appellant still laid out ample evidence in the MOL in defense of the MTD. Those could certainly have been restated better in a formal cause of action.

The District Court stated:

> "...the plaintiff "must actually allege the elements of an enforceable contract (whether express or implied-in-fact), including offer, acceptance, and consideration, in addition to adequately alleging the defendant's breach of the contract." See *Forest Park*, 683 F.3d at 432. Even construing the SAC liberally, it is apparent that Plaintiff does not allege which defendants were parties to these alleged contracts; whether any of these defendants made promises to pay him for the use of his ideas; or what the terms of these alleged contracts were. *See Betty, Inc. v. PepsiCo, Inc*., 283 F. Supp. 3d 154, 166-" (A333).

However, those statements are false. As explained above, Appellant was made an explicit employment offer by Fox, in writing, with "Consideration" in the form

of U.S. dollars. After the initial offer was rejected because of the low amount, senior Fox producers recruited Appellant back into the fold. This was part of normal contract negotiations in the media industry.

The implied-in-fact contract was created when Appellant continued to provide valuable and beneficial services to Fox. Those services were used by Fox on national TV where millions of people saw the results. All of that is more than adequate to meet the standard for an implied-in-fact contract to have been established per *Forest Park*.

In *Forest Park*, the elements required to meet implied-in-fact contract were laid out as:

> "California has long recognized that an implied-in-fact contract may be created where the plaintiff submits an idea (the offer) that the defendant subsequently uses (the acceptance) without compensating the plaintiff (the breach).... Here, although Forest Park does not allege that it expressly conditioned disclosure on a promise of payment, the Complaint alleges facts that, if proven, would establish that USA Network knew or should have known such a condition was implied. Forest Park alleges that it pitched its ideas to USA Network "with the object of persuading USA Network to purchase those ideas for commercial development," and that USA Network and its agent Sepiol "at all relevant times knew (a) that writer-creators pitch creative ideas to prospective purchasers with the object of selling those ideas for compensation; and (b) that it was standard in the entertainment industry for ideas to be pitched with the expectation of compensation in the event of use." Complaint ¶¶ 9, 13. Moreover, the Complaint alleges that USA Network accepted Forest

27

> Park's idea when it knew or should have known of that
> condition by keeping the series treatment Forest Park
> submitted, scheduling a meeting with Forest Park,
> allowing Forest Park to pitch its idea uninterrupted, and
> communicating with Forest Park after the meeting. *See
> Whitfield,* 751 F.2d at 93 (noting that, by opening and
> reviewing a submitted script, a producer might implicitly
> promise to pay for ideas if he uses them, assuming the
> existence of an industry custom of returning unwanted
> submissions unopened); *Gunther-Wahl,* 128 Cal.Rptr.2d
> at 53-54 (describing plaintiff's evidence of industry
> custom to cut off a pitch if the offeree meant to reject an
> idea). These allegations are sufficient to plead a *Desny*
> claim under California law."

Per *Forest Park*, Appellant submitted the ideas to Fox and made the offer (i.e., "where the plaintiff submits an idea (the offer)"). Fox accepted the offer (i.e., "that the defendant subsequently uses (the acceptance) without compensating the plaintiff") and did not compensate, thereby breaching the implied-in-fact contract. The previous explicit written offer eliminates all doubt that Fox knew of Appellant, valued his offer, and implied that they would compensate Appellant.

Had there been no implied-in-fact contract, Appellees, who are large and sophisticated in media dealings, would have blocked Appellant's emails, not taken his phone calls, and not used his ideas. That is what is done immediately be any Hollywood movie studio, for example, when they receive unsolicited calls or manuscripts. Instead, Tucker Carlson, Justin Wells, Brian Jones, and others read

Appellant's emails, answered his calls, and used Appellant's ideas for their own shows without credit or compensation.

The district court concluded by stating:

> "Finally, it was proper for Judge Aaron to recommend dismissal of these preempted claims with prejudice, as leave to amend is not appropriate when a plaintiff does not "suggest any way in which his state law claims can be repleaded to avoid [] preemption." *Myrieckes v. Woods*, No. 08-CV-4297-GBD-THK, 2009 WL 884561, at *6 (S.D.N.Y. Mar. 31, 2009). The Court accordingly adopts the Report and its recommendations as to the First, Second, Third and Eighth Causes of Action." (A334).

First, this quote of, "suggest any way in which his state law claims can be repleaded to avoid [] preemption.", cannot be found in the *Myrieckes v. Woods* decision. Nevertheless, Appellant can obviously "suggest in any way" that his claims can avoid preemption per the lengthy discussion above.

(Of note, *Myrieckes v. Woods* is case law that harms the District Court's final decision. *Myrieckes* states:

> "When there are objections to the Report, the Court must make a de novo determination of those portions of the Report to which objections are made. Id.; see also *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006)."

However, the District Court used the "clear error" standard of review. That was abuse of discretion.)

29

# THIRD ARGUMENT- The magistrate Report that granted leave to amend the defamation claims should not have been reversed

The portion of the Decision reversing the magistrate Report and dismissing with prejudice the defamation claims is replete with major factual errors. For example, a person named Sam Moser who works for Newsmax was described as a defendant when he is not a defendant. The Decision arrived 16-months after Appellant first appealed the Report, and only after Appellant called the district court judge's chambers. It appears to have received a low priority by the district court.

**Incorrect standard of review was used**

The Decision used the "clear error" standard of review, which was incorrect. Appeals of magistrate reports are to be reviewed *de novo*, per *Myrieckes*. The district court also agrees by immediately arguing in favor of the *de novo* standard. By erroneously claiming that Appellant was appealing the portion of the Report that granted him leave to amend The Decision, (A335), which is not true because that portion of the Report was in favor of Appellant, it argues that *de novo* is the proper standard per *Berman v. Neo@Ogilvy LLC*, No. 1:14-CV-523-GHW-SN, 2016 WL 815158, at *1 (S.D.N.Y. Feb. 22, 2016) ("The Court reviews the Report's recommendation that the plaintiff be granted leave to amend *de novo*.").

The claims of defamation were stated well enough to survive two different of motions to dismiss. (see ECF 121 and A267). The magistrate Report granted leave to amend the cause of action for *pro se* Appellant to better state the elements required by state law. (A287). Appellant did not immediately amend the complaint because he appealed other components of the Report. The Decision reversed the Report and dismissed the entire complaint with prejudice.

**People were erroneously listed as defendants**

The Sam Moser mistake (A334) was not a small slipup. It demonstrates that the district court did not properly read the complaint. Sam Moser was listed in the SAC (A115) because he was someone propagating defamation that emanated from Fox Appellees (Moser is a former Fox News employee). Moser was cited as supporting evidence of a pattern of backlisting by Appellees. The unnamed defendants who caused Moser to defame Appellant were clearly Fox News employees. The circumstantial evidence of that was strong enough to survive a MTD.

**The tolling argument**

Another key mistake in the Decision was the section rebutting Appellant's "tolling" argument, also known as the "continuing violation doctrine". Appellant argued that a 2013 incident of defamation at the Fox News building security desk

was still an actionable incident because it was part of an ongoing pattern of defamation that spanned into 2020, or the statute of limitations. Therefore, it was tolled, or revived as an actionable incident.[5]

However, the district court incorrectly viewed Appellant's argument as being one where he claims he is still being harmed to this day by a singular event in 2013. That was an egregious misrepresentation. This section of the Decision is found only in a footnote that states:

> "Plaintiff had argued in his opposition to the motion to dismiss that the continuing violation doctrine should apply because he continues to be damaged by the 2013 defamatory statements—but the continuing violation doctrine does not apply to the continued effects of previous defamatory conduct. See *Selkirk v. State*, 249 A.D.2d 818, 819, 671 N.Y.S.2d 824, 825 (1998) (rejecting plaintiff's request that the statute of limitations on her defamation claim be tolled under the continuing violation doctrine, because this doctrine "may only be predicated on continuing unlawful acts, and not on the continuing effects of earlier unlawful conduct")." (A336).

But the Decision promptly defeats itself by reiterating what Appellant really claimed in the complaint, which was:

> "the 2020 Gasparino emails (in which Gasparino asked Plaintiff "what's the weather like in Russia . . . comrade," asked Plaintiff whether he had been banned from the Fox

---

[5] The 2013 incident was the topic of the 2020 Gasparino defamation when he published comments claiming Appellant was a dangerous man who had to be barred from the building.

building for stalking, and stated that he was "sending [Plaintiff's'] email to the FBI"); (A336)

Clearly, Appellant was pointing out that fresh defamation created by Gasparino in 2020 was directly linked to the 2013 incident. This is a perfect example of when tolling applies, per *Selkirk v. State*.

**The Gasparino defamatory comments were not protected opinion**

The Gasparino emails have been downplayed in the Decision as nothing but "vague…opinion" (A337). That is false.

First, a jury should have been allowed to decide that. Secondly, the comments do not match what the cited case law had in mind. The Decision cites:

> "See, e.g., *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 274 (W.D.N.Y. 2018) (quotation omitted) ("Loose, figurative or hyperbolic statements and unverifiable expressions of opinion are not actionable.") (citation and quotation omitted); Exec. *Trim Constr., Inc. v. Gross*, 525 F. Supp. 3d 357, 370-71 (N.D.N.Y. 2021) (dismissing defamation claim for failure to plead facts constituting defamation per se, because the defendant's statements did not "impugn Plaintiff's integrity or competence with allegations of fraud" and because the statements were "based on [defendant's] opinion, not fact"). (A337)

However, a reasonable jury would conclude that Gasparino was not stating opinion, but rather pure fact, when he claimed that Appellant had been barred from

33

the building for being a stalker. Again, this is just one example of defamation in the complaint that met the state law elements for defamation.

**The defamation claims did indeed state a proper claim of the elements**

The Decision then makes conclusory statement about the merits of the defamation claims. The conclusions were wrong and a jury should have been allowed to decide.

The Decisions lays out the elements required to be stated to survive a MTD:

> "As for the merits of the defamation claims, to allege defamation under New York law, a plaintiff must show: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." Ganske v. Mensch, 480 F. Supp. 542, 551 (S.D.N.Y. 2020)." (A335).

Taking just the Gasparino incidents as examples, Appellant stated and provided evidence that (1) Gasparino published the defamatory statements in written emails that were (2) seen by third parties. Those third parties are the internal Fox News HR and security as well as the FBI. Gasparino admitted he sent the emails to the FBI.[6] The statements were (3) knowingly false because Appellant explained to

---

[6] His actions were clearly made in anger and were malicious. They did not benefit from immunity. If he were truly scared of Appellant, the local police would have been the proper agency for reporting.

Gasparino what happened in 2013.[7] The statements were (4) false for the same reasons, and Appellant, as a medical doctor, suffered (5) "special damages, or *per se* damages.

Two different magistrate Reports on two different MTD's in this case both agreed that the claims were adequate enough to survive a Rule 12(b). Had the complaint been amended, as allowed by the Report, they would have been even stronger claims. Therefore, the Decision to reverse the report dismiss the case was made in error.

## **CONCLUSION**

The evidence clearly shows mistakes made by the district court when it dismissed this case. That decision should be reversed.

The district court is highly competent. Therefore, one must suspect that *pro se* bias or other reasons were factors in the decision to kill this complaint.

Now, this United States Court of Appeals for the Second Circuit has the opportunity to make important decisions that could impact the business model used by Fox News, *et al*, which involves valuable stealing ideas from other smaller

---

[7] Appellant was eventually allowed into the building and made an on-air appearance for Fox Business. He was clearly not a stalker or banned from the building. The alert to security was placed by a disgruntled NewsCorp-WSJ employee named Jenny Strasburg, who was removed as a defendant.

35

content creators on the Internet and blacklisting enemies (i.e., now referred to as "cancelling").

Recent decisions by the Supreme Court and this Court are on the side of Appellant. He prays for relief.

Dated: October 20, 2022

*/ s / Steven E. Greer /*
_____

Steven E. Greer
(212) 945-7252
steve@greerjournal.com

# **CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B)(i) because this brief contains under 9,000 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

SPECIAL APPENDIX

# **Table of Contents**

**Page**

Report and Recommendation of the Honorable Stewart D. Aaron,
dated June 3, 2021 ............................................................ SPA1

Memorandum Order of the Honorable Laura Taylor Swain
Adopting Report and Recommendation in Part,
dated September 7, 2022, Appealed From .................................. SPA24

Judgment of the United States District Court, Southern District
of New York, entered September 8, 2022 .................................... SPA43

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____6/3/2021_____

Steven E. Greer,

                                        **Plaintiff,**

                    -against-

Fox Corporation et al.,

                                        **Defendants.**

**1:20-cv-05484 (LTS) (SDA)**

<u>**REPORT AND RECOMMENDATION**</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE:**

Before the Court are motions by Fox Corporation ("Fox Corp."), Fox News Media ("FNM"), Fox News Network, LLC ("FNN"), Lachlan Murdoch ("Murdoch"), Suzanne Scott ("Scott"), Justin Wells ("Wells"), Charles Gasparino ("Gasparino"), Fox Business Network ("FBN") and Brian Jones ("Jones") (the "Fox News Defendants"); News Corporation ("News Corp."), Dow Jones, The Wall Street Journal ("WSJ") and Gerard Baker ("Baker") (the "News Corp. Defendants"); and Blake Neff ("Neff") (collectively, "Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint ("SAC") filed by *pro* se plaintiff, Steven E. Greer ("Plaintiff" or "Greer"). (Defs.' 4/9/21 Nots. of Mot., ECF Nos. 141, 144.)

For the reasons set forth below, I respectfully recommend that Defendants' motions to dismiss be GRANTED, with leave to replead only his Fourth, Fifth, Sixth and Seventh Causes of Action.

<u>**PROCEDURAL HISTORY**</u>

On July 14, 2020, Plaintiff commenced this action by filing a Complaint asserting a federal copyright infringement claim, as well as six state law claims. (*See* Compl., ECF No. 1.) In his original

Complaint, Plaintiff alleged that he was "the victim of copyright infringement, unfair competition, and misappropriation of 'hot news[,]' as Defendants used [his] original and unique writings for their own television show content, without permission and without giving recognition to [him] as the originator." (*Id*. ¶ 1.) Plaintiff based subject matter jurisdiction on diversity of citizenship, but also asserted jurisdiction predicated upon his federal copyright claim (with attendant supplemental jurisdiction over his state law claims). (*See id*. ¶¶ 85-87.) On July 21, 2020, he filed a "corrected" Complaint alleging the same claims and jurisdictional predicates. (*See* Corrected Compl., ECF No. 6.)

On August 13, 2020, Greer filed an Amended Complaint, which dropped the federal copyright claim[1] and asserted six state law causes of action against sixteen defendants. (*See* Am. Compl., ECF No. 40.) The Amended Complaint based subject matter jurisdiction on diversity of citizenship. (*Id*. ¶ 85.) On September 18, 2020, the Initial Moving Defendants[2] filed their motion to dismiss the Amended Complaint for lack of subject matter jurisdiction. (*See* Defs.' 9/18/20 Not. of Mot., ECF No. 46.) The Initial Moving Defendants argued that two of the Initial Moving Defendants, *i.e.*, Carlson and Strasburg, were nondiverse, such that subject matter jurisdiction did not exist.[3] (*See* Defs.' 9/18/20 Mem. at 1-2.)

---

[1] Plaintiff apparently had failed to obtain a valid registration prior to filing this action. (*See* Pl.'s 1/6/21 Ltr., ECF No. 128, Ex. A at 2.)

[2] The "Initial Moving Defendants" are the defendants who were named in the action at that time and who moved to dismiss the Amended Complaint: Defendants Tucker Carlson ("Carlson"), Fox Corp., FNM, FNN, Murdoch, Scott, Wells, Gasparino, FBN, Jones, News Corp., Dow Jones, WSJ, Baker and Jennifer Strasburg ("Strasberg").

[3] In the Amended Complaint, Greer alleged that he was "a citizen of the United States of America currently living in Florida;" that Carlson "primarily lives" in Washington, D.C., but that Carlson's "current address is actually unknown;" and that Strasberg "is a U.S. citizen" who has a "last known address" in New Jersey, but that "she seems to have been relocated by her employer and is now living in London, England, UK []." (Am. Compl. ¶¶ 6, 18, 76.) However, Carlson asserted in connection with the motion to dismiss that, in

On September 21, 2020, Greer filed a motion for jurisdictional discovery.[4] (Pl.'s 9/21/20 Not. of Mot., ECF No. 52.) By Opinion and Order, dated October 14, 2020, I granted Greer's motion to the extent of permitting him to serve limited written discovery requests with respect to whether Carlson and Strasburg had changed their domiciles. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 6064167, at *6 (S.D.N.Y. Oct. 14, 2020). On October 31, 2020, I issued an Order resolving certain disputes that had arisen regarding those discovery requests. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 6382928 (S.D.N.Y. Oct. 31, 2020). On November 29, 2020, I issued an Order regarding other discovery disputes that had arisen. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 7028922 (S.D.N.Y. Nov. 29, 2020). On December 7, 2020, I issued an Order addressing, among other things, my *in camera* review of certain documents produced by Carlson. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 7183302 (S.D.N.Y. Dec. 7, 2020).

On December 15, 2020, Greer filed his papers in opposition to the Initial Moving Defendants' motion to dismiss the Amended Complaint. (*See* Pl.'s 12/15/20 Opp. Mem., ECF No. 112; Greer 12/15/20 Decl., ECF No. 113.) On December 22, 2020, the Initial Moving Defendants filed their reply papers. (*See* Defs.' 12/22/20 Reply Mem., ECF No. 119; Mintz 12/22/20 Decl., ECF No. 118.) On December 24, 2020, I issued a report and recommendation in which I recommended

---

January 2020, Carlson had changed his domicile from Washington, D.C. to Florida, which is where Greer allegedly is domiciled, such that Carlson is nondiverse. (*See* Defs.' 9/18/20 Mem., ECF No. 50, at 5-7.) Strasberg asserted that she had changed her domicile from the United States to the United Kingdom and that a lawsuit by or against United States citizens domiciled abroad may not be premised on diversity. (*See id.* at 5-6.)

[4] On October 13, 2020, Judge Swain referred the Initial Moving Defendants' motion to dismiss Plaintiff's Amended Complaint to me for a report and recommendation. (*See* 10/13/20 Am. Order of Ref., ECF No. 85.)

that the Initial Moving Defendants' motion to dismiss be granted—because I found that the Court did not have subject matter jurisdiction—but that Plaintiff be granted leave to amend, and on January 28, 2021 my report and recommendation was adopted by Judge Swain. *See Greer v. Carlson*, No. 20-CV-05484 (LTS) (SDA), 2020 WL 8340068, at *6 (S.D.N.Y. Dec. 24, 2020), *report and recommendation adopted*, 2021 WL 293241 (S.D.N.Y. Jan. 28, 2021).

On March 1, 2021, Plaintiff filed his SAC (ECF No. 137), in which he dropped Carlson and Strasburg as defendants, such that there is now complete diversity of citizenship, as the Fox News Defendants and the News Corp. Defendants acknowledge. (*See* F&N Defs.' Mem., ECF No. 143, at 1-2.) On April 9, 2021, the Fox News Defendants, the News Corp. Defendants and Neff moved to dismiss the SAC. (*See* Defs.' 4/9/21 Nots. of Mot.) On April 13, 2021, those motions were referred to me for a report and recommendation. (*See* 4/13/21 Am. Order of Ref., ECF No. 148.) On April 23, 2021, Plaintiff filed his memoranda of law in opposition. (*See* Pl.'s F&N Opp. Mem., ECF No. 149; Pl.'s Neff Opp. Mem., ECF No. 150.) On May 5, 2021, Defendants filed their reply memoranda. (*See* F&N Defs.' Reply Mem., ECF No. 157; Neff Reply Mem., ECF No. 159.)

## BACKGROUND

Greer's 96-page SAC contains 480 paragraphs, includes ten exhibits, and seeks not less than $1 billion in damages, in addition to punitive damages. (*See* SAC at 96.) The following is a summary of the allegations contained in the SAC that relate to the legal claims asserted:[5]

---

[5] In considering the pending motions, the Court "accept[s] as true all factual allegations set forth in the [SAC] and draw all reasonable inferences in favor of the plaintiff. . . . However, this principle is inapplicable to legal conclusions, . . . which . . . are disregarded." *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 466 (S.D.N.Y. 2019) (citations and internal quotation marks omitted).

4

Greer is "an expert used by TV and radio for interviews." (SAC ¶ 93.) During the period 2008 through 2013, he appeared as a guest on FBN and Fox News.[6] (*See id*. ¶¶ 97-103.) Defendant Gasparino, a reporter for FBN, interviewed Greer and used his news tips. (*See id*. ¶¶ 66, 102.)

In 2012, Greer published several Op-Eds and letters in the WSJ.[7] (SAC ¶ 104.) In December 2012, he approached Dow Jones with an idea about creating a healthcare-related video website as part of the WSJ. (*See id*. ¶ 105.) Greer's idea "never materialized," but the WSJ pursued the idea on its own, without credit or payment to Greer. (*See id*. ¶ 108.) However, Greer never pursued litigation about it. (*See id*.)

From 2010 to 2013, Greer provided news tips to Strasburg, who was a reporter at the WSJ, for articles she wrote about "expert networks." (*See* SAC ¶ 109.) Strasberg never informed her editor about Greer's contributions to the articles and Greer "believes that Strasburg was reprimanded by her bosses" as a result. (*Id*. ¶¶ 112-13.) Greer apparently also believes that Strasburg "smeared" his name with other journalists.[8] (*See id*. ¶¶ 114.)

On March 26, 2013, Greer was invited by Defendant Jones, who then was head of FBN, to be a guest on FBN. (SAC ¶¶ 69, 116.) When Greer arrived at the Fox Corp. headquarters in New

---

[6] Fox Corp. is the parent company of FBN, FNM and FNN. (SAC ¶ 35.) Murdoch is the CEO of Fox Corp. and Scott is the CEO of FNM. (*Id*. ¶¶ 35, 39.)

[7] The WSJ is a newspaper owned by Dow Jones, which is a division of the News Corp. (SAC ¶ 104.) Baker served as Editor-in-Chief of the WSJ between 2013 and 2018 and Deputy Editor-in-Chief between 2009 and 2013. (*Id*. ¶ 78.)

[8] The SAC does not affirmatively allege that Strasberg did this, but alleges instead, as follows: "On April 11, 2012, Plaintiff called Strasburg at work to ask whether she had been responsible for smearing Plaintiff's name with other journalists he had worked well with, such as Alicia Mundy. Strasburg failed to deny the accusation." (SAC ¶ 114.)

York City, the security desk in the lobby would not let him pass. (*See id*. ¶ 116.) According to the SAC, "[t]he [security desk] employees were clearly reading some sort of warning message on their computer screen that cautioned against allowing Plaintiff through."[9] (*See id*.) However, after Greer called Jones, he was cleared through security and filmed the FBN segment. (*See id*.)

Greer believes that his "promising media career" was "shut down by Defendants around 2013." (SAC ¶ 226.) He alleges that this "[b]lacklisting by Defendants is the most reasonable explanation" for what transpired. (*Id*. ¶ 227.)

Commencing in 2017, Greer "suspected" that Carlson was misappropriating Greer's written work and using it on Carlson's Fox News show. (SAC ¶¶ 228-29.) For example, in 2019 and 2020, Carlson used the term "Demimplosion" on his show, in circumstances where Greer previously had coined the term "Demplosion." (*See id*. ¶¶ 294, 296, 303.) In 2019, Carlson "used the words 'civil war' to describe the national unrest," in circumstances where Greer previously had made the "the novel analogy that the partisan division in the country was actually like a second civil war." (*See id*. ¶¶ 305, 307.) In 2021, Greer provided news tips to Carlson about the nursing home scandal engulfing Governor Cuomo, but Carlson never gave Greer "due credit for being the person who exposed" the scandal. (*See id*. ¶¶ 252-53, 260.)

Defendant Wells, a producer of Carlson's show, was "complicit" in Carlson's conduct. (SAC ¶ 230.) Defendant Neff was Carlson's senior show writer until July 13, 2020. (*Id*. ¶ 30.)

At some point after March 2019, Plaintiff mailed his book *Rules to Stop Radicals* to Jones, Gasparino and Charles Payne at the Fox Corp. building. (*See* SAC ¶¶ 140, 143.) Plaintiff learned

---

[9] The SAC nowhere alleges the actual content of the message that purportedly was on the computer screen.

from the building mail room security that packages are not delivered to on-air talent unless they approve the shipment. (*See id.* ¶ 143.) However, "no one at Fox acknowledged receiving [the books]." (*Id.*) Thus, according to the SAC, "[t]he books were either never authorized to get past the mail room or they were received by the recipients and those Fox employees lied to Plaintiff about not receiving them." (*Id.*)

On June 6, 2020, Plaintiff emailed Defendant Gasparino to criticize him for insinuating then-President Trump "had committed a crime in manipulating economic data." (*See* SAC ¶ 137.) The same day, the following exchange of emails ensued:

> Gasparino: "I never reported on that but tell me what's the weather like in Russia? Now I'm sending [t]his email to the FBI
>
> Every harassing email you send me goes to my lawyer and the fbi and yes i will sue you for defamation, Comrade"
>
> Greer: "I demand that you have these likely fictional lawyers contact me, and I am forwarding this to real FBI to make sure they know you are using their name. The last time you threatened me I demanded they contact me and you never did. Speaking of defamation, what does the Russia comment you made mean?"
>
> Greer: "The fact that you think the real FBI (not some ex-FBI who is a Fox contributor) would lift a finger to protect a nobody working on a small cable channel few people watch is mind boggling. This goes to my point about your delusions of grandeur. It is like you are a small boy dreaming up things from a comic book."
>
> Gasparino: "I'm going to sue you for slander and report you to the fbi which i have been covering for years dummy Enjoy golf!"
>
> Gasparino: "Btw why are you banned from the fox building? Who got you banned? Wasn't me. Did you stalk someone else? That's why the fbi is involved"

(SAC ¶ 137 (emphasis omitted).)

The SAC contains eight causes of action: (1) Unfair Competition by Misappropriation (First Cause of Action) (SAC ¶¶ 356-69); Unjust Enrichment (Second Cause of Action) (*id.* ¶¶ 370-87);

Misappropriation of "Hot News" (Third Cause of Action) (*id*. ¶¶ 388-402); Defamation (Fourth Cause of Action) (*id*. ¶¶ 403-19); Tortious Interference with Contractual Relations (Fifth Cause of Action) (*id*. ¶¶ 420-32); Tortious Interference with Prospective Economic Advantage (Sixth Cause of Action) (*id*. ¶¶ 433-58); Intentional Infliction of Emotional Distress (Seventh Cause of Action) (*id*. ¶¶ 459-68); Violation of Cal. Bus. & Prof. Code § 17200 *et seq*. (Eighth Cause of Action). (*Id*. ¶¶ 469-80.)

## LEGAL STANDARDS

### I.    Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept as true all of the [factual] allegations contained in [the] complaint[,]" but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

The Court is mindful that a *pro se* plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 111 n.5 (1976)). District courts should read the pleadings of a *pro se* plaintiff liberally and interpret them "to raise the strongest arguments they suggest."[10] *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation omitted).

---

[10] Although the Court has liberally construed the SAC, due to Plaintiff's *pro se* status, the Court notes Plaintiff's allegation that he "is an experienced federal litigator, having won motions in courts ranging from the district court level to the Supreme Court of the United States." (SAC ¶ 8.)

## II.    <u>Copyright Preemption</u>

"Section 301 of the Copyright Act preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014) (citing 17 U.S.C. § 301(a); *Berry v. Deutsche Bank Tr. Co. Ams.*, No. 07-CV-07634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008)). "The Copyright Act preempts claims when: [i] the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act, and [ii] the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *Id*. (citing *Berry*, 2008 WL 4694968, at *6).

"In order for a state cause of action to survive preemption, it must have an extra element beyond reproduction, preparation of derivative works, distribution, performance or display, which changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Transcience Corp.*, 50 F. Supp. 3d at 453 (emphasis omitted) (internal quotation marks omitted) (quoting *Gusler v. Fischer*, 580 F. Supp. 2d 309, 316 (S.D.N.Y. 2008)). Courts in the Second Circuit "take a restrictive view of what extra elements transform an otherwise equivalent claim into one that is qualitatively different from a copyright infringement claim." *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 851 (2d Cir. 1997) ("[T]he 'extra element' test should not be applied so as to allow state claims to survive preemption easily.").

## III.    <u>Defamation</u>

"To state a claim for defamation under New York Law, the plaintiff must allege (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3)

through fault amounting to at least negligence on [the] part of the publisher; (4) that either constitutes defamation per se or caused 'special damages.'" *Gargiulo v. Forster & Garbus, Esqs*., 651 F. Supp. 2d 188, 192 (S.D.N.Y. 2009) (citation omitted).

**IV.    Tortious Interference With Contractual Relations And Prospective Economic Advantage**

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" *Kirch v. Liberty Media Corp*., 449 F.3d 388, 402 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney Inc*., 88 N.Y.2d 413, 424 (1996)).

"Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Kirch*, 449 F.3d at 400 (citing *Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003).

**V.    Intentional Infliction of Emotional Distress ("IIED")**

The elements of a cause of action for IIED are: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co*., 81 N.Y.2d 115, 121 (1993). "Under New York law, a claim for intentional infliction of emotional distress must satisfy an 'exceedingly high legal standard.'" *DiRuzza v.*

*Lanza*, 685 F. App'x 34, 36 (2d Cir. 2017) (quoting *Chanko v. Am. Broad. Cos. Inc.*, 27 N.Y.3d 46, 57 (2016)); *see also Howell*, 81 N.Y.2d at 122 ("[O]f the intentional infliction of emotional distress claims considered by this Court, every one has failed because the alleged conduct was not sufficiently outrageous."). First, the tort "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citation and quotation marks omitted). Second, a party alleging intentional infliction must plead and prove conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, [so as] to be regarded as atrocious, and utterly intolerable in a civilized community[.]" *Chank*o, 27 N.Y.3d at 56 (citation and quotation marks omitted).

## DISCUSSION

**I.**   **Plaintiff's First, Second, Third And Eighth Causes Of Action Are Preempted**

   **A.**   **First Cause Of Action (Unfair Competition)**

In the SAC, Plaintiff alleges with respect to his unfair competition claim that the Fox News Defendants and the News Corp. Defendants engaged in unfair competition by misappropriating "Plaintiff's works," including his "original and nonobvious news stories" and his books. (*See* SAC ¶¶ 358-64, 366-69.) The two elements required for copyright preemption are present here: (1) "the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act," and (2) "the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law." *See Transcience Corp.*, 50 F. Supp. 3d at 453. First, the works fall within the type of works protected

11

by the Copyright Act, since they are "original works of authorship fixed in [a] tangible medium of expression." *See* 17 U.S.C. § 102.[11]

Second, the unfair competition claim seeks to vindicate Plaintiff's legal rights equivalent to the exclusive rights protected by copyright law. "Under New York law,[12] unfair competition includes 'taking the skill, expenditures and labors of a competitor,' as well as 'misappropriat[ing] for the commercial advantage of one person . . . a benefit or property right belonging to another.'" *Broker Genius Inc. v. Gainor*, 810 F. App'x 27, 31 (2d Cir. 2020) (alteration in original) (quoting *Roy Exp. Co. Establishment of Vaduz v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982)); *see also Jacino v. Ill. Tool Works Inc.*, No. 16-CV-01704 (BMC), 2017 WL 4480752, at *5 (E.D.N.Y. Oct. 6, 2017) ("The essence of unfair competition under New York common law is

---

[11] Plaintiff certainly believed his works fell within the type of works protected by the Copyright Act, since his initial Complaint and Corrected Complaint both contained copyright claims. (*See* Compl. ¶¶ 252-58; Corrected Compl. ¶¶ 252-58.) While Plaintiff now argues that his claims cannot be preempted because he "accuses Defendants of misappropriating his ideas, concepts, and discoveries, which are not protected by copyright law" (Pl.'s F&N Opp. Mem. at 5), courts have rejected the sort of "partial preemption doctrine" that Plaintiff is proposing—*i.e.*, "preemption of claims based on misappropriation of [expression] but no preemption of claims based on misappropriation of underlying [non-copyrightable material]." *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 849 (2d Cir. 1997). This is because "Congress, in extending copyright protection only to the [expression] and not to the underlying [material], intended that the latter be in the public domain," and "[p]artial preemption turns that intent on its head by allowing state law to vest exclusive rights in material that Congress intended to be in the public domain and to make unlawful conduct that Congress intended to allow." *Id.*

[12] In determining which state law will apply, a federal court utilizes the conflict of law rules from the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In the present case, the alleged unlawful conduct occurred in New York, where Fox Corp. and News Corp. are located. *See Alan L. Frank L. Assocs., P.C. v. OOO RM Inv.*, No. 17-CV-01338 (NGG) (ARL), 2020 WL 7249439, at *9 (E.D.N.Y. Mar. 2, 2020), *report and recommendation adopted*, 2020 WL 7022317 (E.D.N.Y. Nov. 30, 2020) (applying law of place of tort). In any event, under New York choice-of-law analysis, the first step is to determine whether there exists an actual conflict between the relevant laws of the jurisdictions at issue. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 151 (2d Cir. 2008). The Fox News Defendants and the News Corp. Defendants argue for the application of New York law. (*See* F&N Defs.' Mem. at 4, 22, 28.) Although Plaintiff alleges in the SAC that the Court "has leeway to use common law and statutes from multiple states" (SAC ¶ 357), he does not allege that the relevant law of any states differs from New York law.

the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origins of the goods." (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995))). There are no extra elements required for Plaintiff's unfair competition claim than would be required for a copyright infringement claim.

Thus, "[f]ollowing [the] 'extra element' test, [the Second Circuit has] held that unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992); *see also Integrative Nutrition, Inc. v. Acad. of Healing Nutrition*, 476 F. Supp. 2d 291, 297 (S.D.N.Y. 2007) ("The Copyright Act preempts unfair competition and misappropriation claims 'grounded solely in the copying of a plaintiff's protected expression.'" (quoting *Kregos v. Associated Press*, 3 F.3d 656, 666 (2d Cir. 1993)).

**B.**    **Second Cause Of Action (Unjust Enrichment)**

Plaintiff alleges with respect to his unjust enrichment claim that Plaintiff provided Defendants with his "valuable creative content with expectations of being rewarded by credit for his work and payment" and that Defendants benefited from his misappropriated work. (*See* SAC ¶¶ 374-81.) This claim also is preempted. Again, the works in question fall within the type of works protected by the Copyright Act. In addition, the unjust enrichment claim seeks to vindicate Plaintiff's legal rights equivalent to the exclusive rights protected by copyright law.

A claim for unjust enrichment under New York law requires a plaintiff to allege that "[i] defendant was enriched; [ii] at plaintiff's expense; and [iii] equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation marks omitted).

Where, as here, "the gravamen of an unjust enrichment claim is that defendants 'unjustly benefitted from unauthorized use' of a work within the scope of the Copyright Act . . . the claim is preempted*." Stanacard, LLC v. Rubard, LLC*, No. 12-CV-05176 (CM), 2016 WL 462508, at *22 (S.D.N.Y. Feb. 3, 2016) (quoting *Einiger v. Citigroup, Inc*., No. 14-CV-04570 (GHW), 2014 WL 4494139, at *6 (S.D.N.Y. Sept. 12, 2014)); *see also Panizza v. Mattel, Inc*., No. 02-CV-07722 (GBD), 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) ("The overwhelming majority of courts in this [C]ircuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted." (quoting *Boyle v. Stephens Inc*., No. 97-CV-01351 (SAS), 1998 WL 690816, at *5-6 (S.D.N.Y. Sept. 29, 1998))). Once again, there are no extra elements required for Plaintiff's unjust enrichment claim than would be required for a copyright infringement claim.

### C.   Misappropriation Of "Hot News" (Third Cause Of Action)

With his Third Cause of Action, Plaintiff seeks to circumvent copyright preemption by asserting that his works were "hot news." (*See* SAC ¶¶ 391-96.) However, Plaintiff has not plausibly alleged the "narrow 'hot-news' misappropriation claim [that] survives preemption for actions concerning material within the realm of copyright." *See Nat'l Basketball Ass'n v. Motorola, Inc*., 105 F.3d 841, 852 (2d Cir. 1997) (footnote omitted) (hereinafter, *NBA*); *see also Barclays Cap. Inc. v. Theflyonthewall.com, Inc*., 650 F.3d 876, 897 (2d Cir. 2011) (referring to the 'narrow' 'hot news' misappropriation exemption from preemption").

In *International News Service v. Associated Press*, 248 U.S. 215 (1918) (hereinafter, *INS*), the Supreme Court established what is now known as "hot news" misappropriation. In that case, plaintiff, Associated Press ("AP"), and defendant, International News Service ("INS"), were both

in the news wire business in which they competed to gather and distribute news to member

newspapers. *See id*. at 221. INS would lift factual stories from AP bulletins and send them by wire

to INS papers. *See id*. at 231. INS also would take factual stories from east coast AP papers and

wire them to INS papers on the west coast that had yet to publish because of time differentials.

See id. at 238. The Supreme Court held that INS's conduct was a common law misappropriation

of AP's property. *Id*. at 242.[13]

The provisions of the Copyright Act preempting state law claims that enforced rights

"equivalent" to exclusive copyright protections were added by amendments enacted in 1976.

*See* 17 U.S.C. § 301. "Based on legislative history of the 1976 amendments, it is generally agreed

that a 'hot-news' *INS*-like claim survives preemption."[14] *NBA*, 105 F.3d at 845. In *NBA*, the Second

Circuit stated "that the surviving 'hot-news' *INS*-like claim is limited to cases where: (i) a plaintiff

generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's

use of the information constitutes free riding on the plaintiff's efforts; (iv) the defendant is in

direct competition with a product or service offered by the plaintiffs; and (v) the ability of other

parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to

produce the product or service that its existence or quality would be substantially threatened."[15]

---

[13] *INS* thus purported to establish a principle of federal common law of misappropriation. However, "the law established by *INS* was abolished by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 . . . (1938), which largely abandoned federal common law." *Barclays*, 650 F.3d at 894.

[14] Due to the *NBA* Court using *INS* "as a description of the type of claims—'*INS*-like'—that, Congress has said, are not necessarily preempted by federal copyright law," the Second Circuit has noted that "[s]ome seventy-five years after its death under *Erie*, *INS* thus maintains a ghostly presence as a description of a tort theory, not as precedential establishment of a tort cause of action." *Barclays*, 650 F.3d at 894.

[15] Although this five-part test, like the other similar tests articulated in *NBA* are dicta, the Second Circuit subsequently has treated the test as "stating the elements of the tort" and has applied the *NBA* analysis.

*Id.* To satisfy the second element, a plaintiff "must allege not only that the news was time-sensitive when it was gathered, but that it was time-sensitive when it was misappropriated." *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 612 (S.D.N.Y. 2010) (citing *NBA*, 105 F.3d at 853).

In the present case, Plaintiff has not met the elements of an *INS*-like "hot news" misappropriation claim. First, he has not plausibly alleged that he gathers information at a cost to himself. Unlike AP, the plaintiff in *INS*, which gathered news through its individual members, "who [were] either proprietors or representatives of about 950 daily newspapers published in all parts of the United States," at a cost in 1918 of $3.5 million per annum, *see INS*, 248 U.S. at 221, Plaintiff is a medical doctor in private practice who takes time away from his "day jobs" to create what he refers to as "citizen journalism." (*See* SAC ¶¶ 7, 397.) Second, he has not plausibly alleged that the information that purportedly was misappropriated was time-sensitive both when it was gathered and when it was misappropriated. In his opposition memorandum, Plaintiff recognizes the "time lag" between his reporting and the purported misappropriation and argues that "there is no expiration date for hot news." (*See* Pl.'s F&N Opp. Mem. at 22.) Regardless of the merit of that argument, Plaintiff has not properly pled the time-sensitive element of an *INS*-like claim. Third, Plaintiff has not plausibly alleged that he is in direct competition with Defendants. Unlike the parties in *INS*, who were in the business of "gathering and distribution of news and its publication for profit in newspapers throughout the United States," and who were "in the keenest competition between themselves," *see INS*, 248 U.S. at 221, 230, the parties here are

---

*See Barclays*, 650 F.3d at 900-01 (citing *ConFold Pac., Inc. v. Polaris Indus., Inc.*, 433 F.3d 952, 960 (7th Cir. 2006)).

not in direct competition with one another. While the defendant news organizations in this case

are in the business of 24/7 news reporting, Plaintiff is by his own account a solo citizen journalist.

Fourth, Plaintiff has not plausibly alleged that "the ability of other parties to free-ride on

[his efforts] would so reduce the incentive to produce the product or service that its existence or

quality would be substantially threatened." *NBA*, 105 F.3d at 845. By Plaintiff's own account, he

was able to successfully disseminate his material via various media; for example, according to his

pleadings, he was the first—and, for over six weeks, the sole—media persona providing his

particular take on Governor Cuomo's conduct, both online and on various radio shows. (*See* SAC

¶¶ 232-41.) This is a far cry from the circumstances of *INS*, in which INS's wrongful practices

caused "pirated news to be placed in the hands of [INS's] readers sometimes *simultaneously* with

the service of competing Associated Press papers, *occasionally even earlier*." INS, 248 U.S. at 238-

39 (emphasis added). Moreover, to the extent Plaintiff is concerned that Defendants' "free-

rid[ing]" threatens the "existence or quality" of his own work, his own pleadings suggest a

potential solution, the insufficiency of which he does not plead: He could cease voluntarily

passing news tips to Defendants. (*See, e.g.*, SAC ¶¶ 109, 123, 252, 393.) Since Plaintiff has not

plausibly met the elements of a "hot news" misappropriation claim, his Third Cause of Action

should be dismissed.

> **D.     Cal. Bus. & Prof. Code § 17200 (Eighth Cause Of Action)**

Plaintiff alleges in his Eighth Cause of Action that Defendants violated Section 17200 of

the California Business and Professions Code "by engaging in the fraudulent business acts and

practices of misappropriating Plaintiff's works and portraying to their viewers and readers as

their own work." (*See* SAC ¶ 476 (emphasis omitted).) This claim is subject to copyright

preemption. As set forth in Discussion Section I.A., *supra*, the works in question fall within the type of works protected by the Copyright Act. In addition, the Section 17200 claim seeks to vindicate Plaintiff's legal rights equivalent to the exclusive rights protected by copyright law. Where, as here, a plaintiff brings an unfair competition claim under Section 17200 based upon the unauthorized use of a work within the scope of the Copyright Act, such claim is preempted. *See Kodadek v. MTV Networks, Inc*., 152 F.3d 1209, 1213 (9th Cir. 1998); *accord Intrinsic Sys., LLC v. Lowry*, No. 16-CV-09450 (SJO), 2017 WL 10402609, at *3 (C.D. Cal. Dec. 21, 2017).

**II.     Plaintiff's Defamation Claim (Fourth Cause Of Action) Should Be Dismissed**

Plaintiff's Fourth Cause of Action for defamation is premised upon the 2013 incident at the security desk—when his entry into the Fox Corp. building was delayed, purportedly on the basis of information contained on a computer screen—as well as upon statements purportedly made by Strasburg and Gasparino. (*See* SAC ¶¶ 407, 412-13, 415.) However, Plaintiff has not pled his defamation claim with the requisite particularity.

"A plaintiff must plead the defamatory statements with some particularity." *Alvarado v. Mount Pleasant Cottage Sch. Dist*., 404 F. Supp. 3d 763, 790 (S.D.N.Y. 2019) (citing N.Y. C.P.L.R. 3016(a)). "Under Fed. R. Civ. P. 8's liberal pleading standards, this requires a plaintiff to 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.'" *Id*. (citing *Neal v. Asta Funding, Inc*., 13-CV-02176 (VB), 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014). Plaintiff has not pled the precise statements that he contends were made about him (and

in some cases the persons to whom they were made and/or when they were made) and thus his defamation claim should be dismissed.[16]

### III.   Plaintiff's Tortious Interference Claims (Fifth And Sixth Causes Of Action) Should Be Dismissed

In his Fifth Cause of Action, Plaintiff alleges that he had contracts with WABC Radio and Rudy Giuliani ("Giuliani") and that Defendants somehow caused the breach of those contracts. (*See* SAC ¶¶ 424-25, 427.) However, he has failed to plead essential elements of a tortious interference with contract claim. Specifically, he has not pled that Defendants were aware of any contracts that Plaintiff may have had with WABC Radio and/or Giuliani and/or that Defendants intentionally procured the breach of such contracts. *See Kirch*, 449 F.3d at 402.

In his Sixth Cause of Action, Plaintiff alleges that, if he did not have a contract with WABC Radio or Giuliani, then Defendants interfered with his "prospective economic advantage" with them. (*See* SAC ¶ 436.) Plaintiff also alleges his belief that other "prospective business contract relationships were sabotaged," including relationships with One America News Network ("OANN") and Newsmax. (*See id.* ¶¶ 437-46.) However, Plaintiff has failed to plead essential elements of a tortious interference with business relationships claim. Specifically, he has not properly pled that Defendants were aware of his prospective relationships[17] and intentionally

---

[16] The Court notes that, in the same exchange of emails where Gasparino states he will be reporting Plaintiff to the FBI, Plaintiff stated that Plaintiff would be "forwarding [the emails] to real FBI to make sure they know you are using their name," and also that "[t]he fact that you think the real FBI (not some ex-FBI who is a Fox contributor) would lift a finger to protect a nobody working on a small cable channel few people watch is mind boggling." (*See* SAC ¶ 137.) This suggests that Plaintiff did not believe that Gasparino actually was (or would be) forwarding anything to the FBI.

[17] Plaintiff's allegation that the "Fox Defendants likely knew that Plaintiff was working with OANN" (SAC ¶ 440) is speculative and is not sufficiently pled. Nor is Plaintiff's conjecture that, because there is a "nexus of former Fox employees, who are numerous now at Newsmax, and [the] Fox Defendants, the contract between Plaintiff and Newsmax was known to [the] Fox Defendants." (*See id.* ¶ 446 (emphasis omitted).)

interfered with them. *See Kirch*, 449 F.3d at 400. Nor are there plausible allegations that, even if

they were so aware, Defendants acted solely out of malice, or used dishonest, unfair or improper

means to interfere. *See id*.

Accordingly, Plaintiff's Fifth and Sixth Causes of Action should be dismissed.

## IV.    Plaintiff's IIED Claim (Seventh Cause Of Action) Should Be Dismissed

In his Seventh Cause of Action, Plaintiff alleges that Gasparino made threats to him by

email regarding the FBI, that Plaintiff's "name had been placed in the security computer system

for the lobby staff to be warned about him if he entered the building," and that his "books were

not allowed past the mail room security screening process," causing him emotional distress. (*See*

SAC ¶¶ 462-63, 467.) Plaintiff has not met the "exceedingly high legal standard" to state an IIED

claim. *DiRuzza*, 685 F. App'x at 36. The conduct alleged by Plaintiff does not meet the required

element of extreme and outrageous conduct. The incidents relating to building security and

Plaintiff's books are petty slights, not outrageous conduct. Moreover, the alleged threats

regarding the FBI also do not rise to the requisite level of conduct.[18] *See Matthaus v. Hadjedj*,

148 A.D.3d 425, 425-26 (1st Dep't 2017) ("[P]laintiff's factual allegation that defendant made

false statements to the police, causing her arrest and incarceration, was insufficient as a matter

---

Nor is Plaintiff's conjecture that, because "Fox Defendants work closely with both WABC radio and Giuliani," Defendants were aware of the prospective business relationships between Plaintiff and WABC Radio and/or Giuliani. (*See id*. ¶ 426.) In order to state a claim, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

[18] In this regard, Plaintiff's apparent disbelief that Gasparino actually was (or would be) forwarding anything to the "real FBI" (*see supra* note 16) further undermines Plaintiff's IIED claim.

of law to constitute extreme and outrageous behavior to sustain the claim." (citation omitted)).

Thus, Plaintiff's Seventh Cause of Action should be dismissed.[19]

**V.      Leave to Amend**

"There is a strong preference for allowing plaintiffs to amend inadequate pleadings." *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, No. 08-MDL-01963 (RWS), 2011 WL 4357166, at *2 (S.D.N.Y. Sept. 13, 2011). This is particularly true if the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of his pleading. *See Loreley Fin. (Jersey) No. 3 Ltd.  v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."). Moreover, a *pro se* complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation omitted). Accordingly, although it is a close call, I respectfully recommend that Plaintiff be granted leave to amend with respect to Plaintiff's Fourth, Fifth, Sixth and Seventh Causes of Action.[20]

Plaintiff, however, should not be given leave to replead his First, Second, Third and Eighth Causes of Action since they are preempted. Where, as here, a plaintiff's claims clearly are preempted by federal law, a court need not grant leave to amend. *See Myrieckes v. Woods*, No.

---

[19] Given that I am recommending that each of the claims contained in the SAC be dismissed in their entirety, I do not address Defendants' arguments that certain portions of Plaintiff's claims are time-barred or Plaintiff's counter-arguments thereto.

[20] If leave is granted by the District Court for Plaintiff to file a further amended pleading, Plaintiff should take care to allege specific facts that allege a basis for liability as to each of the named Defendants, as the SAC, as drafted, does not adequately state claims as to many Defendants.

08-CV-04297 (GBD) (THK), 2009 WL 884561, at *7 (S.D.N.Y. Mar. 31, 2009) (finding that amendment would be futile where there was no way for plaintiff to avoid preemption of state law claims under Copyright Act).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motions to dismiss be GRANTED. I also recommend that Plaintiff be given leave to replead only his Fourth, Fifth, Sixth and Seventh Causes of Action, but not his other causes of action.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff.

**SO ORDERED.**

DATED:        New York, New York
              June 3, 2021

_____
STEWART D. AARON
United States Magistrate Judge

                *                *                *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the

Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an

extension of time for filing objections must be addressed to Chief Judge Swain.

   **THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF**

**OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

STEVEN E. GREER,

        Plaintiff,

    -v-                                  No.  20-CV-5484-LTS-SDA

FOX CORPORATION, et al.,

        Defendants.

---------------------------------------------------------x

UNDERLINE Memorandum Order Adopting Report and Recommendation in Part

Before the Court are objections to the Report and Recommendation of Magistrate Judge Aaron, dated June 3, 2021.  (Docket entry no. 160 (the "Report").)  Objections have been filed by both Plaintiff Steven Greer ("Plaintiff" or "Greer") and Defendants Fox Corporation, Fox News Media, Fox News Network, LLC, Lachlan Murdoch, Suzanne Scott, Justin Wells, Charles Gasparino, Fox Business Network, Brian Jones (the "Fox News Defendants" or "Fox"); News Corporation, Dow Jones, the Wall Street Journal, and Gerard Baker ("the News Corp. Defendants") (collectively, "Defendants").  The Court has jurisdiction of this case pursuant to 28 U.S.C. section 1332.

Judge Aaron's Report recommended that the two motions to dismiss filed by Defendants[1] be granted, but that Plaintiff be given leave to replead certain causes of action.  The Court has reviewed thoroughly the Report, the parties' submissions on the objections, and the papers filed in connection with the underlying motions, and, for the following reasons, adopts in part the Report.

---

[1]    One of the motions to dismiss was filed by Defendant Blake Neff, who has not raised any objections to the Report.

SPA25

<u>BACKGROUND</u>

The factual background of this case was discussed in detail in the Report; the parties' familiarity with the facts is assumed.  In brief, Plaintiff is a medical doctor and writer[2] who has appeared as a guest speaker on various television and radio programs.  (Report at 5.) From 2008 through 2013, he appeared as a guest speaker on several Fox News shows, published several op-eds in the Wall Street Journal, and provided news tips to reporters at both Fox and the Wall Street Journal.  (<u>Id.</u>)  These business relationships eventually deteriorated, which Plaintiff attributes to his being "blacklisted" by the Defendants.  (<u>Id.</u> at 5-6.)  During one incident in March 2013, Plaintiff arrived at the Fox headquarters to appear as a program guest, but the security desk would not let him pass initially.  (<u>Id.</u>)  According to Plaintiff, the security desk employee was "clearly reading some sort of warning message on their computer screen that cautioned against allowing Plaintiff through."  (<u>Id.</u> at 6.)  In 2017, Plaintiff began to suspect that Fox anchor Tucker Carlson was misappropriating Plaintiff's written work and using it in his news segments, and was using Plaintiff's news tips without credit.  (<u>Id.</u>)  In March 2019, Plaintiff mailed copies of his book, *Rules to Stop Radicals*, to several employees at Fox, but the books were stopped in the mail room.  (<u>Id.</u> at 6-7.)  In June 2020, Plaintiff emailed Fox reporter Charles Gasparino to criticize his reporting on President Trump, to which Gasparino responded by asking Plaintiff "what's the weather like in Russia . . . Comrade," asking Plaintiff why he had been

---

[2]     The Court notes that, although Plaintiff is proceeding <u>pro se</u> in this action, he is a fairly sophisticated and experienced litigant, who appears to possess a good understanding of the law—and thus will be treated with slightly less solicitude than might normally apply to a completely un-resourced and inexperienced pro se party.  <u>See</u> <u>Benitez v. King</u>, 298 F. Supp. 3d 530, 540 (W.D.N.Y. 2018) ("[W]hile all <u>pro se</u> litigants deserve some degree of leniency, where a litigant has some experience with the legal system, courts may treat him less leniently than wholly inexperienced <u>pro se</u> litigants.") (citation omitted).

banned from the Fox building and whether it had been for "stalk[ing] someone else," calling

Plaintiff a "dummy," and stating that "every harassing email you send me goes to my lawyer and

the FBI."  (Id. at 7.)

Plaintiff commenced this action on July 14, 2020, asserting a federal copyright

infringement claim and six state law claims, stating that he was "the victim of copyright

infringement, unfair competition, and misappropriation of 'hot news,' as Defendants used

Greer's original and unique writings for their own television show content, without permission

and without giving recognition to Greer as the originator."  (Docket entry no. 1.)  He filed a

"corrected" complaint on July 21, 2020, containing the same claims.  (Docket entry no. 6.)  He

filed an Amended Complaint on August 13, 2020, which dropped the federal copyright claim and

asserted six state law causes of action, and alleged diversity of citizenship as the basis for

jurisdiction.  (Docket entry no. 40.)  On September 18, 2020, a group of defendants filed a

motion to dismiss for lack of subject matter jurisdiction (docket entry no. 46), asserting that two

of the moving defendants were nondiverse.  After some jurisdictional discovery, Judge Aaron

issued a report and recommendation in December 2020 recommending that the jurisdictional

motion to dismiss be granted with leave to amend, and the undersigned subsequently adopted

that report and recommendation.  (Docket entry nos. 121, 133.)

Plaintiff filed his Second Amended Complaint (docket entry no. 137 ("SAC")) in

March 2021, dropping the two nondiverse defendants (Carlson and Strasburg), and raising eight

state law causes of action.  In April 2021, the Fox News Defendants, the News Corp.

Defendants, and Neff moved to dismiss the SAC, and the motions were referred to Judge Aaron

for a report and recommendation.  (Docket entry nos. 141, 144.)  Judge Aaron filed his Report on

June 3, 2021, which recommends that Defendants' motions to dismiss be granted, but that

Plaintiff be given leave to replead certain causes of action.  On June 14, 2021, Plaintiff filed an

objection to the Report (docket entry no. 166 ("Pl. Obj.")) asserting that several of his claims

should not have been dismissed.  On June 16, 2021, Defendants filed a partial objection to the

Report (docket entry no. 167 ("Def. Obj.")) asserting that all of Plaintiff's claims should have

been dismissed with prejudice and without leave to amend.  Defendants also filed an opposition

to Plaintiff's objection.  (Docket entry no. 171.)

DISCUSSION

When reviewing a report and recommendation, the Court "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1)(C) (Westlaw through P.L. 117-166).  When a party makes specific objections

to the magistrate judge's findings, the Court "shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is

made."  Id.  "To trigger the de novo review standard, objections to a report and recommendation

must be specific and clearly aimed at particular findings in the magistrate judge's proposal."

United States v. Wofford, 527 F. Supp. 3d 486, 488 (W.D.N.Y. 2021) (citation omitted).

"[W]hen no objection is made to a portion of a report-recommendation, the Court

subjects that portion of the report-recommendation to only a clear error review."  Boice v. M+W

U.S., Inc., 130 F. Supp. 3d 677, 684-85 (N.D.N.Y. 2015) (emphasis omitted).  Clear error review

is also triggered "when a party makes only conclusory or general objections, or simply reiterates

his original arguments."  Piligian v. Icahn Sch. of Med. at Mount Sinai, 490 F. Supp. 3d 707, 715

(S.D.N.Y. 2020) (citation and quotation marks omitted).  "A magistrate judge's order is 'clearly

erroneous' where 'on the entire evidence,' the district court is 'left with the definite and firm

conviction that a mistake has been committed.'" <u>E.E.O.C. v. Teamsters Local 804</u>, 04-CV-2409-

LTS, 2006 WL 44023, at *1 (S.D.N.Y. Jan. 9, 2006) (citation omitted).

        While the objections of a <u>pro</u> <u>se</u> party should be interpreted with leniency, "even a

<u>pro</u> <u>se</u> party's objections to a Report and Recommendation must be specific and clearly aimed at

particular findings in the magistrate's proposal, such that no party be allowed 'a second bite at

the apple' by simply relitigating a prior argument." <u>Pinkney v. Progressive Home Health Servs.</u>,

No. 06-CIV-502-LTS-JCF, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008), <u>aff'd</u>, 367 F.

App'x 210 (2d Cir. 2010) (citation omitted).  In addition, a district court "generally will not

consider new arguments raised for the first time in objections to a magistrate judge's report and

recommendation that could have been raised before the magistrate but were not." <u>Charlot v.</u>

<u>Ecolab, Inc.</u>, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015); <u>see also</u> <u>Illis v. Artus</u>, No. 06-CV-307-

SLT-KAM, 2009 WL 2730870, at *1 (E.D.N.Y. Aug. 28, 2009) ("Petitioner may not now raise

new arguments that the magistrate judge did not have an opportunity to consider.").

        In sum, where a party raises a clear, specific, and non-repetitive objection to the

Report, the Court will review those portions of the Report de novo—but where a party raises

conclusory objections, attempts to relitigate a prior argument, raises entirely new arguments, or

raises no objections at all, those portions of the Report will be reviewed for clear error.


<u>Objections to the Report</u>

        Both Plaintiff and Defendants lodge objections to the Report.  Plaintiff asserts that

the Report erred in its analysis of: (1) the copyright preemption issues; (2) the defamation

claims; and (3) the tortious interference claims.  Defendants assert that the Report was correct to

recommend dismissal of all claims, but object to Judge Aaron's decision to grant Plaintiff leave

to amend.  The Court concludes that Plaintiff's objections lack merit and that the Report

correctly recommended dismissal of all claims.  Moreover, the Court finds meritorious

Defendants' arguments that leave to amend is not appropriate here, and accordingly concludes

that the SAC should be dismissed in its entirety without leave to amend.


Copyright Preemption

This issue encompasses Plaintiff's First, Second, Third, and Eighth causes of

action.  In each of these causes of action, Plaintiff essentially claims that Defendants improperly

copied or misappropriated the ideas contained in his works.  Judge Aaron correctly concluded

that these causes of action are preempted under federal copyright law.

The federal Copyright Act "preempts state law actions that seek to vindicate

rights equivalent to those protected under the Copyright Act."  Transcience Corp. v. Big Time

Toys, LLC, 50 F. Supp. 3d 441, 453 (S.D.N.Y. 2014) (citing 17 U.S.C. § 301(a)).  A state law

claim will be preempted by the Copyright Act when: "(1) the particular work to which the claim

is being applied falls within the type of works protected by the Copyright Act, and (2) the claim

seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive

rights already protected by copyright law."  Id. (citation omitted).

As set forth in greater detail in the Report, Judge Aaron concluded that Plaintiff's

four state law claims (which included claims for unfair competition, unjust enrichment,

misappropriation of hot news, and a claim under the California Business and Professions Code)

were preempted by federal copyright law, because each of these claims sought to vindicate legal

rights that are "equivalent to the exclusive rights protected by copyright law."  (Report at 12.)

See, e.g., Integrative Nutrition, Inc. v. Acad. of Healing Nutrition, 476 F. Supp. 2d 291, 297

(S.D.N.Y. 2007) ("The Copyright Act preempts unfair competition and misappropriation claims 'grounded solely in the copying of a plaintiff's protected expression.'") (citation omitted); Panizza v. Mattel, Inc., No. 02-CV-07722-GBD, 2003 WL 22251317, at *4 (S.D.N.Y. Sept. 30, 2003) ("The overwhelming majority of courts in this [C]ircuit have held that an unjust enrichment claim based upon the copying of subject matter within the scope of the Copyright Act is preempted."); Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 852-53 (2d Cir. 1997) (concluding that, although claims for misappropriation of "hot news" are not always preempted by the Copyright Act, the plaintiff did not meet the criteria for this narrow exception); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1211-13 (9th Cir. 1998) (finding that an unfair competition claim "based on purported violations of the California Business & Professions Code" was "preempted by the federal Copyright Act").

In his objection, Plaintiff now argues that Judge Aaron's preemption analysis was erroneous because (1) he did not possess a copyright registration; (2) mere ideas are not copyrightable; (3) an implied-in-fact contract existed between him and Fox.  Because Plaintiff previously raised these same arguments in his opposition to the motion to dismiss (see docket entry no. 149, at 11-21), the Court reviews these issues for clear error.  See Piligian, 490 F. Supp. 3d at 715 (clear error review is triggered when a party "simply reiterates his original arguments")

Plaintiff claims that the doctrine of copyright preemption cannot apply to any of his claims because he does not possess a copyright registration.  This argument is unfounded, as "[t]he scope of copyright for preemption purposes . . . extends beyond the scope of available copyright protection"—in other words, for preemption purposes it does not matter whether or not Plaintiff held an official copyright registration of the works in question.  Forest Park Pictures v. Universal Television Network, Inc., 683 F.3d 424, 429-30 (2d Cir. 2012); see also We Shall

Overcome Found. v. Richmond Org., Inc. (TRO Inc.), 221 F. Supp. 3d 396, 410 (S.D.N.Y. 2016)

("The scope of the subject matter of preemption is intended to be broad, and includes all works

of a *type* covered by [the Copyright Act], even if federal law does not afford protection to

them.").  Judge Aaron correctly concluded that, because Plaintiff's claims are *of a type* with

claims covered by the Copyright Act, his claims are preempted—regardless of whether he held a

copyright registration.

Plaintiff next argues that the doctrine of copyright preemption cannot apply

because his complaint only alleged the theft of ideas (as opposed to written materials), and

because a person cannot copyright mere ideas.  This argument is also erroneous.  As noted by

Judge Aaron, the Second Circuit has previously rejected this type of "partial preemption"

notion—i.e., the notion that preemption should only apply to claims based on misappropriation

of tangible mediums of expression (such as a book or recording), but not to claims for

misappropriation of the underlying facts or ideas.  See Nat'l Basketball Ass'n, 105 F.3d at 849;

see also Wnet v. Aereo, Inc., 871 F. Supp. 2d 281, 291 (S.D.N.Y. 2012) (a plaintiff's state law

claim will be preempted *both* when the plaintiff alleges "reproduction, distribution, or display of

the copyrighted works themselves," *and* when the plaintiff alleges "acts of reproduction,

distribution, and display of the uncopyrightable facts [or ideas] in the works").  Thus, regardless

of whether Plaintiff's claims concerned the copying of his tangible works (i.e., his books), or

copying of the facts and ideas contained in his books, these claims are all equally preempted

under the Copyright Act, as Judge Aaron correctly concluded.

Plaintiff next alleges that the doctrine of copyright preemption cannot apply

because he maintained an implied-in-fact contract with Fox (based on his history of passing on

news tips and ideas to Fox reporters).  Plaintiff does not explain how the existence of such a

contract would relate to the copyright preemption issue.  Interpreting his arguments with

leniency, the Court notes that Plaintiff may be referring to the doctrine whereby an implied-in-

fact contract is not always preempted by the Copyright Act.  See, e.g., Forest Park, 683 F.3d at

432 (finding that a claim for breach of an implied-in-fact contract should not be preempted by

the Copyright Act).

   To the extent that this argument represents Plaintiff's attempt to raise a new claim

(i.e., a claim for breach of an implied-in-fact contract) at this late stage in the litigation, this

attempt must fail.  As an initial matter, Plaintiff has waived this issue by failing to raise it in his

SAC.  While Plaintiff mentioned this implied-in-fact contract idea in passing in his opposition to

Defendant's motion to dismiss, his SAC did not include breach of an implied-in-fact contract as

one of his eight causes of action.  It is well-established that, despite the "procedural latitude"

afforded to pro se plaintiffs, "courts are not required to consider claims that are raised for the

first time in a pro se plaintiff's papers in opposition to a motion."  Wiltshire v. Wanderman, No.

13-CV-9169 CS, 2015 WL 4164808, at *1 n.3 (S.D.N.Y. July 10, 2015) (citations omitted).

   Second, even if the Court were to consider this implied-in-fact contract claim,

Plaintiff has not adequately alleged its elements.  As the Second Circuit has noted, "preemption

cannot be avoided simply by labeling a claim 'breach of contract'"—rather, the plaintiff "must

actually allege the elements of an enforceable contract (whether express or implied-in-fact),

including offer, acceptance, and consideration, in addition to adequately alleging the defendant's

breach of the contract."  See Forest Park, 683 F.3d at 432.  Even construing the SAC liberally, it

is apparent that Plaintiff does not allege which defendants were parties to these alleged contracts;

whether any of these defendants made promises to pay him for the use of his ideas; or what the

terms of these alleged contracts were.  See Betty, Inc. v. PepsiCo, Inc., 283 F. Supp. 3d 154, 166-

67 (S.D.N.Y. 2017) (concluding that the plaintiff had not adequately alleged the existence of an

implied-in-fact contract because "[n]owhere does Plaintiff allege that Defendant promised to pay

Plaintiff for the use of any of Plaintiff's concepts" and because "Plaintiff has not alleged any of

the terms of the agreement, making it impossible to determine whether Defendant is in breach of

the alleged contract").  Finally, it was proper for Judge Aaron to recommend dismissal of these

preempted claims with prejudice, as leave to amend is not appropriate when a plaintiff does not

"suggest any way in which his state law claims can be repleaded to avoid [] preemption."

Myrieckes v. Woods, No. 08-CV-4297-GBD-THK, 2009 WL 884561, at *6 (S.D.N.Y. Mar. 31,

2009) (citation and quotation marks omitted).  The Court accordingly adopts the Report and its

recommendations as to the First, Second, Third and Eighth Causes of Action.


    Defamation

        Plaintiff's second challenge to the Report concerns his defamation claims

(pleaded in the Fourth Cause of Action).  Judge Aaron concluded that the defamation claims

were not pleaded with the requisite particularity and should be dismissed with leave to amend.

Plaintiff raises two main objections, arguing that: (1) he should have been allowed to conduct

discovery in order to plead these claims with particularity; and (2) he sufficiently alleged

defamatory statements by defendants Gasparino, Moser, and the Fox security desk employees.

Defendants, however, argue that these defamation claims are clearly meritless and should have

been dismissed with prejudice.

        Because Plaintiff previously raised these same defamation arguments in his

opposition to the motion to dismiss (see docket entry no. 149, at 26-35), the Court reviews the

defamation aspect of the Report for clear error in connection with Plaintiff's objections.  As for

Defendants' objections to Judge Aaron's decision to grant leave to amend, the Court conducts a

de novo review, because Defendants raise discrete objections to a specific portion of the Report.

See, e.g., Berman v. Neo@Ogilvy LLC, No. 1:14-CV-523-GHW-SN, 2016 WL 815158, at *1

(S.D.N.Y. Feb. 22, 2016) ("The Court reviews the Report's recommendation that the plaintiff be

granted leave to amend de novo.").

As an initial matter, Plaintiff appears to make a request for early discovery,

asserting that he "should have been able to depose key witnesses who know the details" of the

facts underlying his defamation claims, and requesting that the Court "allow discovery to

proceed." (Pl. Obj. at 4.) This argument is misplaced. A plaintiff does not have a right to

engage in early discovery in order to bolster his arguments at the motion to dismiss stage. See In

re Alper Holdings, Inc., 398 B.R. 736, 754 (S.D.N.Y. 2008) (discovery is unwarranted where it

would function as a "fishing expedition for evidence in search of a theory that has yet to be

asserted"); Bussey v. Phillips, 419 F. Supp. 2d 569, 591-92 (S.D.N.Y. 2006) ("To the extent that

[plaintiff] is arguing that additional discovery would allow him to amend his complaint to state a

viable claim, the Court is similarly unpersuaded . . . [d]iscovery is not intended to be a fishing

expedition.") (citation and quotation omitted).

As for the merits of the defamation claims, to allege defamation under New York

law, a plaintiff must show: "(1) a written defamatory statement of and concerning the plaintiff,

(2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special

damages or per se actionability." Ganske v. Mensch, 480 F. Supp. 542, 551 (S.D.N.Y. 2020).

New York courts encourage the resolution of "defamation claims at the pleading stage, 'so as not

to protract litigation through discovery and trial and thereby chill the exercise of constitutionally

protected freedoms.'" Biro v. Conde Nast, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (citation

omitted).  Plaintiff's defamation claims fall into four categories: (1) the 2013 news desk incident

(in which plaintiff was refused access to the Fox building by security desk employees); (2) the

2020 Gasparino emails (in which Gasparino asked Plaintiff "what's the weather like in Russia . .

. comrade," asked Plaintiff whether he had been banned from the Fox building for stalking, and

stated that he was "sending [Plaintiff's'] email to the FBI"); (3) the 2020 Moser email (in which

Moser referred to Plaintiff as "a nut"); and (4) other "less particular" allegations of defamation.

The Court discerns no clear error in Judge Aaron's conclusion that Plaintiff's

defamation claims are critically lacking in particularity and must be dismissed.  However, upon a

de novo review of the Report's recommendation of leave to replead, the Court concludes that

dismissal with prejudice is the better course of action.  First, the claim pertaining to the 2013

news desk incident should be dismissed with prejudice because it is barred by the statute of

limitations.  Under New York law, a defamation claim "accrues on the date of first publication,"

and the statute of limitations is one year.  Gelbard v. Bodary, 270 A.D.2d 866, 866 (2000).

Because this incident occurred in 2013, and Plaintiff did not institute this action until 2020, this

defamation claim is time-barred.  Further, Plaintiff has presented no plausible theory under

which the statute of limitations might be tolled.[3]  Thus, leave to amend is denied as futile, and

this claim is dismissed with prejudice.  See 421-A Tenants Ass'n, Inc. v. 125 Court St. LLC, 760

F. App'x 44, 51 (2d Cir. 2019) (affirming denial of motion for leave to amend as futile because

---

[3]      Plaintiff had argued in his opposition to the motion to dismiss that the continuing
violation doctrine should apply because he continues to be damaged by the 2013
defamatory statements—but the continuing violation doctrine does not apply to the
continued effects of previous defamatory conduct.  See Selkirk v. State, 249 A.D.2d 818,
819, 671 N.Y.S.2d 824, 825 (1998) (rejecting plaintiff's request that the statute of
limitations on her defamation claim be tolled under the continuing violation doctrine,
because this doctrine "may only be predicated on continuing unlawful acts, and not on
the continuing effects of earlier unlawful conduct").

"any amendment to the complaint cannot fix the statute of limitations problem that the [plaintiffs] face").

Second, as for the 2020 Gasparino emails, Plaintiff argues that he sufficiently pled all of the elements of defamation. Defendants, however, argue that because Plaintiff cannot show that the defamatory emails were seen by anyone but Gasparino and Plaintiff themselves, he cannot satisfy the publication element. See Medcalf v. Walsh, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013) (citation omitted) (holding that a defamatory statement "is not published if it is read by no one but the one defamed") (citation omitted). While Plaintiff does allege in his SAC that the Gasparino emails "were cc'd and reviewed by third-parties" (SAC ¶ 412), he does not state the basis for this knowledge, nor does he state who these third parties might be. See Shak v. Krum, No. 18-CV-650-LGS, 2018 WL 5831319, at *4 (S.D.N.Y. Nov. 6, 2018) ("To satisfy the publication element and survive a motion to dismiss, [Plaintiff] must identify a third party to whom the defamatory statement was allegedly published."). The SAC is also lacking with regard to the falsity and damages elements of defamation—Plaintiff does not allege which factual assertions in the Gasparino emails were false, nor does he allege how Gasparino's vague and opinion-based statements could have amounted to defamation per se. See, e.g., Mastercraft Decorators, Inc. v. Orlando, 356 F. Supp. 3d 259, 274 (W.D.N.Y. 2018) (quotation omitted) ("Loose, figurative or hyperbolic statements and unverifiable expressions of opinion are not actionable.") (citation and quotation omitted); Exec. Trim Constr., Inc. v. Gross, 525 F. Supp. 3d 357, 370-71 (N.D.N.Y. 2021) (dismissing defamation claim for failure to plead facts constituting defamation per se, because the defendant's statements did not "impugn Plaintiff's integrity or competence with allegations of fraud" and because the statements were "based on [defendant's] opinion, not fact").

SPA37

Allowing amendment of this claim would be futile, as there is no indication that Plaintiff could produce additional facts would cure these deficiencies.  See Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 582 (E.D.N.Y. 2011) ("[D]enial of leave to amend based on futility is proper when additional facts do not or cannot remedy the deficiency of an initial pleading.").  Plaintiff has already had two prior opportunities to amend his complaint, yet has made very few substantive changes to his claims; Plaintiff himself has stated that he "needs to be able to conduct discovery now" if he is to provide further factual details on his defamation claims.  (Pl. Obj. at 6.)  As explained above, Plaintiff is not entitled to early discovery in order to bolster his arguments at the motion to dismiss stage, and the SAC indicates that he is unable to state a viable defamation claim.  This claim is accordingly dismissed with prejudice.

Third, as for the Moser defamation claim, Plaintiff asserts that he has satisfied all elements of defamation, but Defendants argue that Moser's email statement—"[Plaintiff] may be a nut but I hope he's right"—is plainly not actionable.  The Court agrees that this statement cannot support a viable defamation claim because "rhetorical hyperbole, vulgar name-calling, and generalized insults are not, without more, actionable under the defamation laws."  Conti v. Doe, 535 F. Supp. 3d 257, 282 n.9 (S.D.N.Y. 2021).  Moreover, Plaintiff does not allege how this simple name-calling constituted defamation per se or resulted in special damages, nor does he allege whom this statement was published to.  As this statement is not actionable as a matter of law, denial of leave to amend is proper.  Finally, as for Plaintiff's "less particular" allegations of "defamatory incidents involving Rudy Guiliani, WABC radio, Newsmax, etc.," Plaintiff himself admits that these claims "lack much detail."  (Pl. Obj. at 6.)  These claims are wholly lacking in specificity and do not allege facts that would satisfy any of the elements of defamation.  Affording Plaintiff leave to amend these nebulous claims would, in light of

Plaintiff's admitted lack of information, be futile.  Accordingly, Plaintiff's defamation claims are

dismissed with prejudice.


Tortious Interference with Contract

The next category of objections relates to Plaintiff's claims for tortious

interference with contract and tortious interference with prospective economic advantage

(Plaintiff's Fifth and Sixth Causes of Action).  The Report concluded that these claims should be

dismissed without prejudice for "fail[ure] to plead essential elements."  (Report at 19.)  Plaintiff

asserts that this determination was in error, while Defendants assert that Plaintiff's overly

speculative claims should have been dismissed without leave to amend.  Because Plaintiff

previously raised these same arguments (see docket entry no. 149, at 36-40), the Court reviews

Plaintiff's objections for clear error, and conducts a de novo review of Defendants' objections.

In his Fifth Cause of Action, Plaintiff alleged that he held implied-in-fact

contracts with WABC Radio, OANN, and Rudy Giuliani (the "contracting entities") for various

novel news media projects, and that Defendants improperly caused the breach of these contracts

through their "defamatory blacklisting."  In his Sixth Cause of Action, Plaintiff alleged that, even

if no official contracts existed for these projects, the Defendants still interfered with his

prospective business relationships with these entities.

As Judge Aaron correctly concluded, Plaintiff did not adequately allege key

elements[4] of both of these claims—most prominently, knowledge by the Defendants.  Plaintiff

---

[4]       "Under New York law, the elements of tortious interference with contract are (1) 'the
existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's
knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-
party's breach of the contract without justification'; (4) 'actual breach of the contract';
and (5) 'damages resulting therefrom.'"  Kirch v. Liberty Media Corp., 449 F.3d 388,

claimed that, because of the "nexus" between the Defendants and the contracting entities (i.e.,

the fact that many of these individuals had worked together on TV or radio shows, or were in

personal contact), Defendants "likely knew" that Plaintiff was planning media projects with the

contracting entities.  (SAC at 84-87.)  These speculative and conclusory allegations are

insufficient to show that Defendants had any actual knowledge of the alleged contracts and/or

prospective business relationships that Plaintiff may have held with the alleged contracting

entities and individuals.  See Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co., 546 F.

Supp. 3d 204, 211-12 (W.D.N.Y. 2021) (to plead tortious interference with contract, a plaintiff

must show that the defendant had "actual knowledge of the specific contract . . . a defendant's

general awareness that the plaintiff did business with third parties is not enough") (citations

omitted); see also LuxSoma LLC v. Leg Res., Inc., 289 F. Supp. 3d 514, 525 (S.D.N.Y. 2018) (a

tortious interference with economic advantage claim must fail when "no reasonable juror could

find that the [] Defendants knew of any dealings between [the plaintiff] and [the third-party]").

Allowing amendment of these claims would be futile, as Plaintiff has given no indication that he

is capable of producing additional facts that would show knowledge by the Defendants—

Plaintiff himself asserts that "for me to state with any more particularity on this matter would

require discovery."  (Pl. Obj. at 7.)  Accordingly, Plaintiff's tortious interference claims are

dismissed with prejudice.

---

401-02 (2d Cir. 2006) (citation omitted). "Under New York law, to state a claim for
tortious interference with prospective economic advantage, the plaintiff must allege that
'(1) it had a business relationship with a third party; (2) the defendant knew of that
relationship and intentionally interfered with it; (3) the defendant acted solely out of
malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference
caused injury to the relationship.'" Id. at 400 (citation omitted).

Intentional Infliction of Emotional Distress ("IIED")

   The final category of objections relates to Plaintiff's claims for IIED (Seventh Cause of Action).  The Report concluded that Plaintiff could not meet the "exceedingly high legal standard" for an IIED claim, but nevertheless recommended granting him leave to amend.  Defendants object, arguing that leave to amend is not warranted.  Plaintiff raises no objections to the Report's analysis of his IIED claims.  The Court thus reviews the Report's dismissal determination for clear error, and the leave to amend determination de novo.

   Under New York Law, the key element of an IIED claim is "extreme and outrageous conduct" by the defendant.  Rother v. NYS Dep't of Corr. & Cmty. Supervision, 970 F. Supp. 2d 78, 104 (N.D.N.Y. 2013).  Conduct is "extreme and outrageous" when it is "so outrageous in character, and so extreme in danger, as to go beyond all possible bounds of decency, and be utterly intolerable in a civilized community."  Id. (quotation omitted).  "Very few claims satisfy the extreme and outrageous requirement of an IIED claim."  Id. (citation omitted).  "Whether or not the requisite outrageousness of the conduct has been satisfied by the allegations [in the complaint] is, in the first instance, an issue of law for judicial determination."  164 Mulberry St. Corp. v. Columbia Univ., 4 A.D.3d 49, 56 (2004).  Further, if a plaintiff fails to put forth plausible allegations of extreme and outrageous conduct, it is appropriate to dismiss without leave to amend because "any amendment would be futile."  See Rother, 970 F. Supp. 2d at 106.  "IIED claims have a one-year statute of limitations."  Id. at 104.

   Plaintiff claims that Defendants intentionally caused him emotional distress during three incidents: (1) the 2013 Fox security desk incident; (2) the 2020 Gasparino emails; and (3) Fox's failure to allow Plaintiff's books "past the mail room security screening process." (SAC ¶ 459-68.)  The Court concludes that each of these claims should be dismissed without

leave to amend because amendment would be futile.  First, as to the security desk incident, this claim is clearly time-barred—this incident occurred in 2013, and the statute of limitations for IIED claims is one year.  Any arguments regarding the "continuing violation" doctrine are inapposite here, for the reasons explained above (in relation to Plaintiff's defamation claim). (See supra, at 12-13.)

Second, with respect to the Gasparino emails, the court concludes that Plaintiff's allegations are insufficient as a matter of law to frame a viable claim of outrageous conduct.  See Semper, 786 F. Supp. 2d at 586 ("Whether the conduct is 'outrageous' is a matter of law to be decided by the court.") (citation omitted).  The Gasparino emails were essentially an incident of petty name-calling, which at most might be interpreted to constitute an accusation that Plaintiff had been "banned from the Fox building" for "stalk[ing] someone else."  (Report at 7.) However, to rise to the level of IIED, the conduct "must consist of more than mere insults, indignities, and annoyances," 164 Mulberry St, 4 A.D.3d at 56, and "false accusations of criminal conduct, or conduct that society deems reprehensible, do not inherently establish IIED," Truman v. Brown, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2020).  Allowing amendment of this claim would be futile, as there is no indication that Plaintiff could produce additional facts to cure this deficiency.  Finally, Plaintiff's IIED claim relating to the Fox mailroom treatment of his book should also be denied with prejudice, as this claim does not allege any actions even approaching outrageous conduct, and there is likewise no indication that amendment would cure this deficiency.

C<small>ONCLUSION</small>

For the reasons set forth above, the Report is adopted insofar as it recommends the dismissal of all of Plaintiff's claims.  Plaintiff's objections to the Report are overruled, and Defendants' objections to the Report are sustained.  The motions to dismiss are granted in full and the SAC is dismissed with prejudice.  The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.  The pro se plaintiff has consented to electronic service.

This Memorandum Order resolves docket entry nos. 141 and 144.

SO ORDERED.

Dated: New York, New York
          September 7, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

STEVEN E. GREER,

Plaintiff,                               20 **CIVIL** 5484 (LTS) (SDA)

-against-                                                                    **JUDGMENT**

FOX CORPORATION, et al.,

Defendants.
----------------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:**   That for the reasons
set forth in the Court's Memorandum Order dated September 07, 2022, the Report is adopted
insofar as it recommends the dismissal of all of Plaintiff's claims. Plaintiff's objections to the Report
are overruled, and Defendants' objections to the Report are sustained. The motions to dismiss are
granted in full and the SAC is dismissed with prejudice; accordingly, this case is closed.

**Dated:**  New York, New York
       September 08, 2022

**RUBY J. KRAJICK**

_____
**Clerk of Court**

**BY:**         _____
**Deputy Clerk**